J-S48012-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee, | : | |
| | : | |
| v. | : | |
| | : | |
| DARREN RICHARD GENTILQUORE, | : | |
| | : | |
| Appellant | : | No. 1860 MDA 2013 |

Appeal from the Judgment of Sentence December 21, 2006,
Court of Common Pleas, Susquehanna County,
Criminal Division at No. CP-58-CR-0000183-2006

BEFORE:  DONOHUE, JENKINS and PLATT*, JJ.

MEMORANDUM BY DONOHUE, J.:　　　　　　**FILED SEPTEMBER 09, 2014**

Appellant, Darren Richard Gentilquore ("Gentilquore"), appeals from the judgment of sentence of the Court of Common Pleas, Susquehanna County, following a conviction on the following charges: two counts of criminal attempt to commit homicide, 18 Pa.C.S.A. §§ 2501(a), 901(a), two counts of aggravated assault, 18 Pa.C.S.A. § 2702(a)(1), and two counts of aggravated assault, 18 Pa.C.S.A. § 2702(a)(4).  For the reasons that follow, we affirm.

A summary of the relevant facts and procedural history is as follows.  In 2005, Shaun Bigelow ("Shaun"), a resident of New Jersey, purchased property in Susquehanna County, Pennsylvania, that bordered Gentilquore's property.  Shaun and Gentilquore became friends.  On May 26, 2006, Shaun and his brother, Ryan Bigelow ("Ryan") (collectively "the Bigelows"), along

---

*Retired Senior Judge assigned to the Superior Court.

with their wives and children, arrived at Shaun's property to camp for Memorial Day Weekend.

Tommy McCormick ("McCormick"), another neighbor of Shaun's, invited the Bigelows to come to his property to sit around the fire. N.T., 11/13/06, at 208. After the Bigelows' wives and children went to bed, Shaun and Ryan rode their ATVs to McCormick's property. *Id.* Gentilquore began to follow the Bigelows on his ATV. *Id.* at 209-10. While on the trail to McCormick's property, Ryan slowed down and Gentilquore ran his ATV into the back of Ryan's ATV, causing damage. *Id.* at 210-11. Gentilquore agreed to pay for the damage, resolving the situation without any incident. *Id.* at 211-12.

The Bigelows, Gentilquore, McCormick, Jim Velcheck, and two of McCormick's guests sat around the fire and imbibed alcoholic beverages. After a few hours, Ryan left the McCormick's to go back to Shaun's property. *Id.* at 213-14. Later in the evening, Gentilquore started a fight with McCormick's guest, Anthony Saverino ("Saverino"). N.T., 11/14/06, at 254-55. Saverino and McCormick asked Gentilquore to leave McCormick's property and Gentilquore obliged. *Id.* at 255. Shortly after Gentilquore left, gunshots were fired. *Id.* at 256-57. The gunshots woke the Bigelows' wives and children. N.T., 11/13/06, at 216. Shaun's wife yelled to Gentilquore to stop shooting because it was scaring the kids. *Id.* at 217. There was a pause in the shooting, but shortly thereafter, gunshots began again. *Id.* at

218-19. Ryan decided he was going to go to Gentilquore's property to tell him to stop. *Id.* at 219-20.

Ryan went to Gentilquore's property, began banging on the storm door, and "told him to cut this shit." *Id.* at 220. Gentilquore did not respond to Ryan. Ryan told Gentilquore to come outside and yelled, "Stop shooting the fucking gun, I got kids that are sleeping down there and you're scaring the shit out of them." *Id.* at 224. Gentilquore did not respond so Ryan got back on his ATV and began to head towards McCormick's property to get Shaun. *Id.* at 232. Ryan believed that Shaun would be able to get Gentilquore to stop shooting the gun since they were friends. *Id.*

The Bigelows rode their ATVs from McCormick's property to Gentilquore's property. Shaun arrived first and quietly knocked on the door. *Id.* at 52, 234. When Ryan arrived, he ran his ATV into Gentilquore's ATV because he was angry and as retaliation for Gentilquore hitting his ATV earlier in the evening. *Id.* at 236. Ryan proceeded to come to Gentilquore's front door to his house and bang on the door. N.T., 11/15/06, at 62-63. Gentilquore came to the front door with a gun. *Id.* at 63-64; N.T., 11/13/06, at 237. Shaun said to Ryan, "Ryan, let it go he's got a gun, let it go, we'll deal with it tomorrow." *Id.* at 237. Ryan approached the door, at which time, Gentilquore told him to get off his property or else he was going to "blow the barrel." *Id.* at 239. Ryan told Gentilquore if he did not come outside and face him without a gun, he would "gut him like a pig" and

threatened to burn his house down. N.T., 11/13/06, at 224; N.T., 11/15/06, at 64-65.

Gentilquore proceeded to stick the barrel of the gun out of the storm door and poked Ryan with the gun. *Id.* at 240. Ryan then called Gentilquore "a fucking pussy" and said, "you don't have a hair on your ass to pull that trigger." *Id.* at 241. Gentilquore pulled the trigger, shooting Ryan in the abdomen at point blank range. Shaun began screaming at Gentilquore, "Darren what the fuck are you doing? It's Shaun, it's Shaun, what are you doing." *Id.* at 92. Gentilquore turned towards Shaun and shot him in the abdomen. *Id.*

Gentilquore was charged with two counts of criminal attempt to commit homicide and four counts of aggravated assault. A jury convicted Gentilquore on all charges on November 15, 2006. On December 21, 2006, the trial court sentenced Gentilquore to 20-40 years of incarceration on count one of criminal attempt to commit homicide and 20-40 years of incarceration on the second count of criminal attempt to commit homicide, to run consecutive to the first count. N.T., 12/21/06, at 38-39. The four counts of aggravated assault merged with counts one and two and therefore, Gentilquore was not sentenced on those charges. *Id.* at 3, 40.

On January 2, 2007, Gentilquore filed a petition for reconsideration of sentence, which the trial court denied on January 10, 2007. Gentilquore filed a direct appeal to this Court challenging the discretionary aspects of his

sentence. Gentilquore's counsel failed to file a statement pursuant to Pa.R.A.P. 2119(f). As a result, this Court deemed Gentilquore's challenge to the discretionary aspects of his sentence waived and affirmed his judgment of sentence.

While Gentilquore waited for disposition of his direct appeal, he filed a *pro se* PCRA petition. This *pro se* PCRA petition was held in abeyance pending disposition of his direct appeal. After receiving this Court's disposition, affirming his judgment of sentence, Gentilquore filed a series of amended PCRA petitions, asserting ineffective assistance of counsel by both trial and appellate counsel. Ultimately, Gentilquore's petition was denied by the PCRA court on July 12, 2010. Gentilquore appealed.

This Court vacated the PCRA court's order and remanded for further proceedings after concluding that the PCRA court violated Pa.R.Crim.P. 907 by not providing notice of its intent to dismiss Gentilquore's petition without a hearing. On March 21, 2012, the PCRA court provided notice to Gentilquore of its intention to dismiss his PCRA petition pursuant to Pa.R.Crim.P. 907. Gentilquore filed another amended PCRA petition on May 2, 2012. The PCRA court entered an order on July 9, 2012, dismissing the May 2, 2012 PCRA petition. Gentilquore appealed the PCRA court's order to this Court.

On September 12, 2013, this Court reversed the PCRA court's order and remanded with directions to reinstate Gentilquore's right to file a direct

appeal *nunc pro tunc*, concluding that counsel's failure to include a Pa.R.A.P. 2119(f) statement compromised Gentilquore's direct appellate rights. ***Commonwealth v. Gentilquore***, 1461 MDA 2012, at 7 (Pa. Super. September 12, 2013) (unpublished memorandum). On September 18, 2013, the Susquehanna County Court of Common Pleas issued an order reinstating Gentilquore's right to file a direct appeal *nunc pro tunc*. Gentilquore timely filed a notice of appeal to this Court. On direct appeal, Gentilquore raises the following issues for our review[1]:

> 1. Did the [t]rial [c]ourt err in, over the objection of counsel, allowing the admission of prior wrongs to prove the state of mind of [Gentilquore] about his property and identity w[h]ere the admission did not fit within an exception to Pa.R.E. 404(b) and, even if it had, the probative value did not outweigh the unfair prejudice?
>
> 2. Did the [t]rial [c]ourt err, over the objection of [t]rial [c]ounsel, allowing the cumulative testimony from witnesses unconnected with the victims to testify that [Gentilquore] would shoot on his property lat[e] at night which was not only irrelevant to the present matter, but, also unduly prejudicial to [Gentilquore's] right to a fair trial?
>
> 3. Did the [t]rial [c]ourt err in, over the objection of [t]rial [c]ounsel, allow the admission and publication of color photographs of the Bigelows to the jury thereby inflaming the passions of the jury and depriving [Gentilquore] of a fair trial?

---

[1] Gentilquore was not ordered to file a 1925(b) statement. The trial court did not file a 1925(a) opinion in this matter. However, the trial court's July 9, 2012 opinion and order, dismissing Gentilquore's requests for PCRA relief, addresses all of the issues that Gentilquore raises in his appeal. We further note that we have reordered Gentilquore's issues on appeal for ease of disposition.

4.    Should [Gentilquore] be granted a new trial as a result of the amendment to 18 Pa.C.S.A. section 505(2.1) better known as the Castle Doctrine?

Gentilquore's Brief at 3.

For his first issue on appeal, Gentilquore claims that the trial court erred in admitting the testimony of Alix Vis ("Vis"), Peter Hogle ("Hogle"), and John Beaudry ("Beaudry"). Gentilquore's Brief at 32-35, 38-40. At trial, after Gentilquore objected to the admission of their testimony to establish prior bad acts, such as shooting firearms on his property and making terroristic threats, the trial court made a ruling that the evidence was admissible to prove motive, intent, state of mind, and identity as to the shooter. N.T., 11/13/06, at 4.

We begin with our well-settled standard of review:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of that evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*Commonwealth v. Page*, 965 A.2d 1212, 1219 (Pa. Super. 2009).

Rule 404(b)(1) of the Pennsylvania Rules of Evidence provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show actions in conformity therewith." Pa.R.E. 404(b)(1). However, evidence of prior bad acts "may be introduced for other limited purposes, including, but not limited to, establishing motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, common scheme or design, *modus operandi*, and the natural history of the case." Pa.R.E. 404(b)(2); ***Commonwealth v. Kinard***, __ A.3d __, 2014 WL 848273, at *3 (Pa. Super. 2014) (citing ***Commonwealth v. Brookins***, 10 A.3d 1251, 1256 (Pa. Super. 2010), *appeal denied*, 22 A.3d 1033 (Pa. 2011)). The trial court may admit the evidence for these limited purposes if the probative value of the evidence outweighs its potential prejudicial effect. Pa.R.E. 404(b)(2).

We begin with the trial court's decision to permit Vis to testify regarding Gentilquore's prior threats to her. At trial, Vis testified that Gentilquore threatened the lives of her and her dogs if they ever entered his property and screamed at her on one occasion that if "[a]nything happens to me or my machine [(his ATV)], you will die." N.T., 11/13/06, at 161-62. Following Vis's testimony, the trial court issued limiting instructions to the jury that Vis's testimony could only be used during deliberations as it may relate to the identity, state of mind, and motive and/or intent of Gentilquore. ***Id.*** at 176.

Gentilquore argues that the trial court erred under Rule 404(b)(1) in admitting Vis's testimony. At trial, Gentilquore testified that he acted out of fear and did not want to kill the Bigelows, but felt it was necessary to protect himself and his family, as he was afraid that Ryan would burn his house down and kill him. N.T., 11/13/06, at 68. He further testified that he shot from the hip and shot low because he did not want to kill Ryan. *Id.* at 69-70. After Ryan went down, he "thought it was over with so [he] lowered [the gun]." *Id.* at 71. Shaun then appeared, however, and knocked out the glass of the front door to Gentilquore's house, and it looked as though he was about to lift his leg to walk through the door. *Id.* at 71. Gentilquore testified that Shaun "looked like the angel of death … coming to get me," and that he was terrified at that moment. *Id.* at 72. In sum, Gentilquore insists that he "did not shoot or even threaten[] to shoot the Bigelows for simply entering onto his property, but, rather shot them at his front door after the Bigelows had been acting in a threatening manner which is completely distinct from the testimony of [] Vis […]." *Id.* at 33.

The trial court's admission of the Vis testimony was error. The trial court indicated that it permitted the introduction of the Vis testimony based upon its relevance to show motive, intent, state of mind, and identity under Rule 404(b)(1). Gentilquore's identity as the shooter was never at issue in the case. With respect to motive, this Court has repeatedly held that "[i]n order for evidence of prior bad acts to be admissible as evidence of motive,

the prior bad acts must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." *Commonwealth v. Jackson*, 900 A.2d 936, 940 (Pa. Super. 2006) (citing *Commonwealth v. Melendez-Rodriguez*, 856 A.2d 1278, 1283 (Pa. Super. 2004)). In this case, there is no evidence that the shootings of the Bigelows "grew out of or was in any way caused by" Gentilquore's alleged threat directed at Vis.

With respect to intent or state of mind, the Commonwealth did not elicit any testimony regarding when the Vis threat occurred. Moreover, the incidents with Vis and the Bigelows share no factually similarities whatsoever. Vis testified that Gentilquore threatened her after he had a near collision with a friend of hers on the road, N.T., 11/13/06, at 162, while the incident with the Bigelows occurred when they were on Gentilquore's property, outside of his front door, with Ryan banging on the door and threatened to "gut [him] like a pig." There are no logical connections between the two incidents that would enable the jury to determine Gentilquore's intent on the evening in question, including whether or not he was acting in self-defense when he shot the Bigelows.

Instead, Vis's testimony regarding Gentilquore's prior threat, at most, demonstrated that Gentilquore was an aggressive landowner, and therefore had a propensity to engage in aggressive or violent behavior towards trespassers on his land. Evidence establishing "a person's character to show

that on a particular occasion the person acted in accordance with the character" is expressly prohibited by Rule 404(b). Pa.R.E. 404(b)(1). Our Supreme Court has succinctly stated that

> (t)he purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and **to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried**. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence.

**Kinard**, 2014 WL 848273, at *3 (emphasis added) (quoting **Commonwealth v. Spruill**, 391 A.2d 1048, 1049 (Pa. 1978)). Accordingly, given our conclusion that Vis's testimony failed to establish Gentilquore's intent and instead established only Gentilquore's propensity to act as an aggressive landowner, we conclude that the trial court erred in admitting Vis's testimony.[2]

Nevertheless, in **Commonwealth v. Stafford**, 749 A.2d 489 (Pa. Super. 2000), this Court held:

> Not all improper references to prior bad acts will mandate a new trial, however. 'Mere passing

---

[2] Gentilquore cites to **Commonwealth v. Seiders**, 614 A.2d 689 (Pa. 1992) for the proposition that "prior crimes cannot be used to establish merely a general intent." Gentilquore's Brief at 32. However, our review of **Seiders** reveals that our Supreme Court held that prior crimes may not be introduced as evidence of intent in cases **where intent is not at issue**. **Seiders**, 614 A.2d at 691. Unlike **Seiders**, the ultimate issue presented to the jury in this case was whether Gentilquore shot the Bigelows in self-defense. Thus, **Seiders** is inapplicable to this case.

- 11 -

> references to criminal activity will not require reversal unless the record indicates that prejudice resulted from the reference.' 'Harmless error is present when the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict.'

*Id.* at 496-97 (internal citations omitted). "The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial." *Commonwealth v. Hetzel*, 822 A.2d 747, 759 (Pa. Super. 2003) (citing *Commonwealth v. Drummond*, 775 A.2d 849, 853 (Pa. Super. 2001)). After our review of the record, we conclude that the trial court's error in admitting the Vis testimony did not contribute to the verdict in light of the overwhelming evidence properly admitted at trial, and therefore, constitutes harmless error.

In this case, the ultimate issue presented to the jury was whether Gentilquore shot the Bigelows in self-defense. Self-defense rights are governed by 18 Pa.C.S.A. § 505. Section 505 provides, in relevant part:

> **(a) Use of force justifiable for protection of the person.**—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
>
> **(b) Limitations on justifying necessity for use of force.**—
>
> * * *

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S.A. § 505.[3]

"If a defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving the self-defense claim beyond a reasonable doubt." **Commonwealth v. Chine**, 40 A.3d 1239, 1243 (Pa. Super. 2012) (citing **Commonwealth v. Houser**, 18 A.3d 1128, 1135 (Pa. 2011)). This Court has held that

The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or

---

[3] Section 505 was amended, effective August 29, 2011, adding Pennsylvania's "stand your ground" law in paragraphs (b)(2.1)-(2.6). As will be discussed *infra*, these additions do not apply to this case as the incident occurred in May 2006.

>    3) the accused had a duty to retreat and the retreat
>    was possible with complete safety.

*Commonwealth v. Smith*, 2014 WL 3844118, at *3 (Pa. Super. Aug. 6, 2014) (citing *Commonwealth v. Hammond*, 953 A.2d 544, 559 (Pa. Super. 2008), *appeal denied*, 964 A.2d 894 (Pa. 2009)). In addition, "the Commonwealth can negate a self-defense claim by proving the defendant 'used more force than reasonably necessary to protect against death or serious bodily injury.'" *Smith*, 2014 WL 3844118, at *4 (citing *Commonwealth v. Truong*, 36 A.3d 592, 599 (Pa. Super. 2012) (*en banc*)).

Although Gentilquore claimed that he acted in self-defense when he shot the Bigelows, no evidence introduced at trial established that Gentilquore was justified in using deadly force to protect himself. First, no testimony established that either of the Bigelows were armed during the confrontation with Gentilquore. While Gentilquore argued that he feared for his safety because Ryan threatened to "gut him like a pig" and burn his house down, Gentilquore never testified that Ryan had a weapon, a blow torch, a can of gasoline, a Molotov cocktail, or any fire-starting device on him. *Id.* at 127, 162. Gentilquore also admitted that he did not see a gun on Shaun. N.T., 11/15/06, at 137. Finally, Floyd Rifenburgh ("Rifenburgh"), Gentilquore's stepson who was with him inside of the home at the time of the incident, also testified that he did not see any weapons in either of Ryan or Shaun's hands. N.T., 11/14/06, at 119.

- 14 -

In **Commonwealth v. Witherspoon**, 730 A.2d 496 (Pa. Super. 1999), this Court held that although "[w]e have not previously addressed what level of force is justifiable when repelling an attack[, …] the use of a deadly weapon against a relatively unarmed assailant" is **not** a justifiable level of force. **Id.** at 499 (citations omitted). Our Supreme Court echoed this position in **Commonwealth v. Rivera**, 983 A.2d 1211 (Pa. 2009), holding that the "[a]ppellant was not justified in responding to [an] officer's pursuit by employing deadly force" when the officer "did not draw his weapon during his pursuit of [the] [a]ppellant." **Id.** at 1221. As a result, Gentilquore's use of deadly force against the unarmed Bigelows was unjustifiable, and the result of this case could not be impacted by the erroneous allowance of the Vis "bad acts" evidence.

Moreover, the evidence establishes that Gentilquore was not justified in using deadly force to protect himself in light of the evidence showing that the Bigelows were outside of Gentilquore's house and therefore, a reasonable person would not have believed he was in imminent danger of death or serious bodily injury. In this case, the Bigelows never entered Gentilquore's dwelling, but rather, remained outside of Gentilquore's house at all times. Gentilquore admitted that he remained in his house and ignored Ryan the first time he came to his property, and that Ryan left a few minutes later. N.T., 11/15/06, at 54-56. Although Ryan admitted to banging on Gentilquore's door when he arrived the second time, both Ryan

- 15 -

and Shaun testified that they never attempted to gain entry to the house. N.T., 11/13/06, at 95-96, 229-30. Furthermore, Gentilquore provided his version of the events as they unfolded, testifying that as Ryan stood outside of his door, "[Ryan] said he was gonna burn the place down and that I was a pussy and then I - - I fired the weapon." N.T., 11/15/06, at 68-69, 121-24.

Given this evidence, we conclude that there was overwhelming evidence to negate Gentilquore's claim that he acted in self-defense and to convict him of criminal attempt to commit homicide and aggravated assault, such that the trial court's error in admitting Vis's testimony regarding Gentilquore's prior threat to her was harmless. Accordingly, Gentilquore is not entitled to relief on this issue on appeal.

With respect to the testimony of Hogle and Beaudry, we conclude that the trial court did not err or commit abuse of discretion in admitting this evidence. Hogle testified that Gentilquore often shot firearms on his property late at night and that he called the police on the night in question after hearing gunshots and "angry voices." N.T., 11/13/06, at 183-84. Beaudry's testimony was that he regularly heard gunfire in the late evening or early morning hours after Gentilquore moved to the area and that he heard gunshots and yelling on the night in question. N.T., 11/14/06, at 6-8.

Gentilquore argues that Hogle and Beaudry "presented little probity to explain why [Gentilquore] shot the Bigelows, and was, in fact, irrelevant to proving the identity of the shooter, since [Gentilquore] admitted that he shot

the Bigelow[s] and, also, never denied that he shot his firearm on his property late at night." Gentilquore's Brief at 34. Given Gentilquore's admission that he shot the Bigelows, we agree that identity was not at issue. However, we fail to see how testimony that Gentilquore shot firearms on his property late at night and on the evening is question is evidence of "prior bad acts" and thereby excludable evidence under Rule 404(b).

In **Commonwealth v. Luster**, 71 A.3d 1029 (Pa. Super. 2013), the appellant was charged with murdering a woman he was romantically involved with. **Id.** at 1035-37. At trial, an individual who lived in the same apartment building as the victim testified that he often heard the appellant and the victim arguing. **Id.** at 1049-50. The appellant objected to this testimony as irrelevant and on appeal, asserted that the testimony was evidence of prior bad acts and "tended to convey to the jury that he was a 'violent person [who] likely physically abused [the victim]." **Id.** at 1050. This Court determined that the testimony could not be characterized as evidence of "prior bad acts," stating that "nothing in [the witness's] description of the couple's arguments referenced physical abuse or violence." **Id.**

In this case, Gentilquore asserted that the testimony portrayed him as "a nuisance to the community thereby inflaming the minds of the jury and depriving [him] of the presumption of innocence to which he was entitled." Gentilquore's Brief at 35. However, Gentilquore failed to identify any

relevant character issue leading to an inference of propensity. Gentilquore never argued at trial or on appeal that the testimony tended to convey to the jury that because he shot firearms on his property at night, he demonstrated a propensity to shoot people. Rule 404(b) only prohibits evidence of a crime, wrong, or other act "to prove a person's character in order ***to show that on a particular occasion the person acted in accordance with the character***." Pa.R.E. 404(b) (emphasis added). In this case, if anything, the testimony that Gentilquore shot firearms on his property was neutral in this aspect as it established that he shot firearms on his property on a multitude of occasions without harming anyone. Accordingly, we do not find error in the trial court's decision to admit the testimony of Hogle and Beaudry.

For his second issue on appeal, Gentilquore argues that the trial court should have excluded Beaudry's testimony as cumulative evidence because Gentilquore's "night time shooting had been shown through the testimony of the Bigelows, as well as others who had direct contact with [him] that night." ***Id.*** at 39. Gentilquore asserts that introduction of Beaudry's testimony that Gentilquore discharged firearms late at night "exposed and etched into the minds of the jurors the picture of [Gentilquore] disturbing the nighttime peace of his neighbors" and as "a nuisance to the community." ***Id.*** As a result, Gentilquore argues that the cumulative evidence deprived

- 18 -

him of a fair trial because it "drew the jurors' attention away from the relevant issue […] and likely inflamed the minds of the jury." *Id.* at 40.

As this Court has held, the trial court "may make and enforce rules and orders […] limiting the number of witnesses whose testimony is similar or cumulative." *Commonwealth v. Walsh*, 36 A.3d 613, 621 (Pa. Super. 2012) (citing Pa.R.C.P. 223(1); *Commonwealth v. Smith*, 694 A.2d 1086, 1091 (Pa. 1997)). "In order to find that the trial court's evidentiary rulings constituted reversible error, such rulings must not only have been erroneous but must also have been harmful to the complaining party." *Collins v. Cooper*, 746 A.2d 615, 619 (Pa. Super. 2000) (citing *Romeo v. Manuel*, 703 A.2d 530, 532 (Pa. Super 1997) (citations omitted)).

At trial, the trial court overruled Gentilquore's objection after engaging in the following discussion:

> Attorney Walker: It's cumulative. We know this guy fires his gun on his property. He has numerous witnesses to testify to it.
>
> Attorney Legg: It will take five minutes, Your Honor.
>
> The Court: Is this your last witness as to that issue?
>
> Attorney Legg: As to the unconnected threat, correct. I mean, I have people from New Jersey that will testify that Mr. Gentilquore was at their camp, left their camp, the gun fire started.
>
> The Court: On that night?
>
> Attorney Legg: On that night – well, as well as the fact that he'd shot guns in the past.

> The Court: Well, I think we can offer him. Overruled.

N.T., 11/14/06, at 3.

The trial court held that although the evidence presented was cumulative, the cumulative evidence did not prejudice Gentilquore, stating, "we do not find that additional testimony to the same fact so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place." Trial Court Opinion, 7/9/12, at 29. Furthermore, the trial court explained, "we do not believe that had the cumulative evidence not been presented, the result of the proceeding would have been different." *Id.* After a review of the record, we agree.

Rule 403 of the Pennsylvania Rules of Evidence provides that "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. Cumulative evidence is "additional evidence of the same character as existing evidence and that supports a fact established by the existing evidence." *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 989 (Pa. Super. 2007) (citing Black's Law Dictionary, Seventh Edition, at 577).

In this case, Beaudry's testimony that Gentilquore shot firearms on his property was substantially similar to the testimony provided by ten other witnesses, including seven who were connected with the events of the

evening and Gentilquore himself. Beaudry did not offer any additional evidence to strengthen or bolster the testimony, but simply provided that Gentilquore shot firearms on his property late at night. Thus, Beaudry's testimony was cumulative.

However, Gentilquore failed to establish how the admission of Beaudry's testimony was erroneous or harmful to him. This Court has held that

> Evidence is not unfairly prejudicial simply because it is harmful to the defendant's case. Rather, exclusion of evidence on this ground is 'limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case

*Commonwealth v. Folely*, 38 A.3d 882, 891 (Pa. Super. 2012) (citing *Commonwealth v. Page*, 965 A.2d 1212, 1220 (Pa. Super. 2009)).

We note that Gentilquore specifically challenged the admission of Beaudry's testimony because he was unconnected with the events of the evening. However, Gentilquore failed to distinguish the testimony of Beaudry from the testimony of the witnesses connected with the events of the evening. Thus, although the evidence was cumulative, there is no indication that the admission of Beaudry's testimony improperly contributed to the verdict. As a result, pursuant to our standard of review, we conclude that the trial court's evidentiary rulings did not constitute reversible error.

For his third issue on appeal, Gentilquore argues that the trial court erred in allowing the admission and publication of color photographs of the

Bigelows to the jury thereby inflaming the passions of the jury. Gentilquore's Brief at 35. Gentilquore claims the photographs deprived him of a fair trial because "the inflammatory nature of the photographs could have no other effect but to prejudice the minds of the jury by causing the members of the jury panel to be improperly and unfairly influenced by emotion rather than logical thought and application of the law." *Id.* at 37.

The standard of law for admitting photographs is well settled. Our Supreme Court has held that

> [t]he admissibility of photographs falls within the discretion of the trial court and only an abuse of that discretion will constitute reversible error. The test for determining whether photographs are admissible involves a two-step analysis. "First, the court must decide whether a photograph is inflammatory by its very nature. If the photograph is deemed inflammatory, the court must determine whether the essential evidentiary value of the photograph outweighs the likelihood that the photograph will improperly inflame the minds and passions of the jury."

*Commonwealth v. Lowry*, 55 A.3d 743, 753 (Pa. Super. 2012) (internal citations omitted) (citing *Commonwealth v. Malloy*, 856 A.2d 767, 776 (Pa. 2004)).

In this case, the photographs of the Bigelows were, by their very nature, inflammatory. The photographs displayed the Bigelows' open wounds, the wounds as they healed, and Shaun on a ventilator. N.T., 11/13/06, at 97-98, 249-50; Commonwealth's Exhibits 11, 14. Given the inflammatory nature of the photographs, the trial court was required to

determine whether the essential evidentiary value of the photographs outweighed the likelihood that the photographs would improperly inflame the minds and passions of the jury.

At trial, Gentilquore argued that the colored photographs had no probative value because the Bigelows could adequately describe their injuries in detail and their doctors and medical records could detail how the injuries affected them. *Id.* at 98. Thus, Gentilquore asserted that the purpose of the colored photographs was to show blood and to inflame the jury. *Id.* at 98-99. Conversely, the Commonwealth argued that they were offering the photographs to prove serious bodily injury. *Id.* at 99. The trial court asserted that "the photographic evidence was highly relevant to prove the existence of a serious bodily injury to Shaun […] [and] were of such essential evidentiary value that their need clearly outweighed the likelihood of inflaming the minds and passions of the jurors." Trial Court Opinion, 7/9/12, at 18.

We agree that the photographs possessed evidentiary value to prove serious bodily injury. However, Gentilquore's stipulation at trial that the Bigelows sustained serious bodily injury eliminated the probative value of the photographs. *See id.* at 251-52. This Court has held that "[i]f an inflammatory photograph is merely cumulative of other evidence, it will not be deemed admissible." *Commonwealth v. Wright*, 961 A.2d 119, 138 (Pa. Super. 2009) (citing *Commonwealth v. Robinson*, 864 A.2d 460 (Pa.

2004)). Thus, the trial court erred in admitting the color photographs to prove serious bodily injury.

For the same reasons as set forth hereinabove with respect to the Vis "bad acts" testimony, however, we conclude that the trial court's error in admitting the color photographs was harmless, as the properly admitted evidence of guilt was so overwhelming that the error did not prejudice Gentilquore, or the prejudicial effect of the error was *de minimis*. Gentilquore admitted that he shot the Bigelows, and no evidence at trial established any justification to use deadly force to protect himself or any basis for a reasonable person to believe he was in imminent danger of death or serious bodily injury when he did so. In short, Gentilquore shot the Bigelows, and not in self-defense. As a result, the erroneous admission of the color photographs was so insignificant by comparison to the properly admitted evidence of guilt that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict.

For his fourth issue on appeal, Gentilquore argues that he should be granted a new trial as a result of the amendments to the self-defense statute under 18 Pa.C.S.A. § 505(b)(2.1), better known as the "Castle Doctrine." Gentilquore's Brief at 40. The Pennsylvania legislature expanded self-defense rights by amending section 505 on June 28, 2011, which became effective on August 29, 2011. Gentilquore asserts that the 2011 amendments should be applied retroactively to this case. *Id.* at 41.

Section 505(b)(2.1) provides:

> Except as otherwise provided in paragraph (2.2), an actor is presumed to have a reasonable belief that deadly force is immediately necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat if both of the following conditions exist:
>
> > (i) The person against whom the force is used is in the process of unlawfully and forcefully entered and is present within, a dwelling, residence or occupied vehicle; or the person against whom the force is used is or is attempting to unlawfully and forcefully remove another against that other's will from the dwelling, residence or occupied vehicle.
> >
> > (ii) The actor knows or has reason to believe that the unlawful and forceful entry or act is occurring or has occurred.

18 Pa.C.S.A. § 505(b)(2.1).

We begin by acknowledging that "this Court applies current statutory law until the Legislature repeals or amends it." *Commonwealth v. Thomas*, 51 A.3d 255, 260 (Pa. Super. 2012). Section 1926 of the Statutory Construction Act provides that "No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S.A. § 1926. Thus, there is a presumption against the retroactive effect of statutes. However, as this Court held in *Commonwealth v. Estman*, 868 A.2d 1210 (Pa. Super. 2005), "case law provides [] that legislation concerning purely procedural matters, not substantive matters, may be applied to litigation existing at the time of

passage as well as litigation commenced after its passage." ***Id.*** at 1212. (citing ***Morabito's Auto Sales v. Dept. of Transportation***, 715 A.2d 384 (Pa. 1998)). Substantive law "creates, defines and regulates rights, while procedural laws are those that address methods by which rights are enforced." ***Estman***, 868 A.2d at 1212 (citing ***Commonwealth v. Morris***, 771 A.2d 721, 738 (Pa. 2001)).

In this case, Gentilquore constructed two arguments for retroactive application of the "Castle Doctrine." His first argument is based upon the preamble to the statute. He argued that "[b]ecause the legislature specifically recognized that the amendment to section 505 was derived from ancient common law doctrine, law that already existed, it manifestly expressed its intent that the Amendments to section 505 be applied retroactively." Gentilquore's Brief at 41. However, our Supreme Court has stated, "'a statute is not regarded as operating retroactively because of the mere fact that it relates to antecedent events, or draws upon antecedent facts for its operation.' 'Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment.'" ***Commonwealth v. Robinson***, 7 A.3d 868, 871 (Pa. Super. 2010) (citing ***In the Interest of K.A.P., Jr.***, 916 A.2d 1152, 1159 (Pa. Super. 2007) (internal citations omitted)). In this instance, there is no indication in the statute that the legislature intended section 505(b)(2.1) to apply retroactively. Accordingly, absent the clear and manifest intention of

the Legislature, the amendments to the "Castle Doctrine" do not apply retroactively. **See** 1 Pa.C.S.A. § 1926.

Gentilquore's second argument is that the amendments to section 505 are substantive in nature, and therefore, must be applied retroactively. **Id.** at 42. This argument is self-defeating. **Estman** established that only legislation concerning purely procedural matters may be applied retroactively. **Estman**, 868 A.2d at 1212. As previously stated, the amendments to section 505(b)(2.1) expanded self-defense rights. Thus, the amendments to section 505(b)(2.1) necessarily create, define, and regulate self-defense rights and are thereby substantive in nature. As substantive rights do not apply retroactively, Gentilquore's argument that he should be granted a new trial as a result of these amendments is denied.

Judgment of sentence affirmed.

Jenkins, J. joins the Memorandum.

Platt, J. concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2014