J. S69021/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :    IN THE SUPERIOR COURT OF
          :          PENNSYLVANIA
          :
          :
      v.          :
          :
CARL PATRICK          :
          :
      APPELLANT    :    No. 523 MDA 2016

Appeal from the Judgment of Sentence October 28, 2015
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000114-2015

BEFORE: STABILE, J., DUBOW, J., and PLATT, J.[*]

MEMORANDUM BY DUBOW, J.:        **FILED DECEMBER 07, 2016**

Appellant, Carl Patrick, appeals from the October 28, 2015 Judgment

of Sentence entered in the Lebanon County Court of Common Pleas following

his conviction of one count of Possession with Intent to Deliver a Controlled

Substance and one count of Criminal Use of a Communication Facility.[1]  After

careful review, we affirm on the basis of the trial court's Opinion.

The trial court summarized the factual and procedural history of this

case as follows:

> [At Appellant's jury trial,] Sergeant Brett Hopkins of the Lebanon
> County Drug Task Force testified that the [instant] charges arose
> from an investigation using a confidential informant, Deborah
> Arnold.  Hopkins explained that individuals often offered to

---

[*] Retired Senior Judge Assigned to the Superior Court.

[1] 35 P.S. § 780-113(a); and 18 Pa.C.S. § 7512(a), respectively.

cooperate with the Drug Task Force when they have criminal charges pending against them. He acknowledged that Arnold did have three pending theft charges at the time of the investigation, but noted that no promises or assurances had been made to her regarding the disposition of those charges. Throughout the course of the investigation, Arnold had given information to the Drug Task Force which Hopkins had been able to verify.

Hopkins explained that Arnold had contacted the Drug Task Force and informed them that she could purchase drugs from an individual known to her as "Loso" and that Hopkins had arranged to meet with Arnold on the evening of June 14, 2014. He explained that they planned to conduct a "controlled buy" during which Arnold would arrange to buy drugs from "Loso." Arnold would contact "Loso" via phone call in Hopkins' presence and Hopkins would accompany her to the location where she was to meet this individual and observe as much as possible of the transaction. Hopkins showed Arnold a Pennsylvania driver's license photograph of [Appellant] and Arnold identified him as the person she knew as "Loso."

After Arnold arrived to meet with Hopkins, she provided the officers with a phone number she had for [Appellant]. She then placed a call to that number. Hopkins observed that it was the same number she had given to him. At first there was no answer, but Arnold received a return call shortly after placing the initial call. Hopkins heard Arnold tell the caller that she wanted "100." He explained that "100" is an increment of crack cocaine that costs $100.00. When Arnold got off the phone, she told Hopkins that she had been directed to go to 1328 Lehman Street to meet [Appellant] to obtain the drugs. Arnold was then strip searched by Sarah Stager, the director of Central Booking. Stager testified that she conducted a thorough search of Arnold's clothing and person and found no contraband. Hopkins then provided Arnold with $100.00 to purchase the cocaine. He had previously recorded the serial numbers of the currency.

Hopkins and Arnold then drove to the Lehman Street address and parked on Fourteenth Street. Almost immediately, [Appellant] pulled up in a Fiat on the opposite side of the street. After [Appellant] had exited his vehicle, Arnold got out of the vehicle and went to meet him. Hopkins observed the two go inside the rear apartment door at 1328 Lehman Street. Within a

minute, Arnold returned to the car, and handed Hopkins a plastic baggy containing a substance which was later determined to be crack cocaine. When they returned to the station, Arnold was strip searched again. Hopkins explained that the baggie was not subjected to DNA or fingerprint testing due to the existence of other evidence regarding the drug transaction, the cost of such testing, and the wrinkled condition of the baggie.

Hopkins explained that the Drug Task Force was involved in multiple ongoing investigations which involved Arnold. [Appellant] was not arrested for this incident until several months later so that the integrity of the other investigations would not be compromised. When he was arrested, [Appellant] was in possession of a cellphone which was determined to be the one used during the June 24, 2014 transaction with Arnold.

Arnold also testified at the trial. Over [Appellant's] objection, she explained that she had used the phone number she had given to Hopkins in order to reach [Appellant] prior to June 24, 2014 and that she had also been to the Lehman Street address before that date.[2] When [Appellant] returned her call on June 24, 2014, she recognized his voice. She told him that she wanted "100" and he told her to come to his residence. She explained that [Appellant] lived in an apartment building and that she had entered directly into his apartment through a rear door. She recalled that there was someone cooking in the kitchen of the apartment, but that she did not come into contact with anyone other than [Appellant] either inside or outside of the apartment.

Both Hopkins and Arnold acknowledged that Arnold had a 2009 conviction for retail theft. Arnold testified that she had served three months incarceration for that conviction. Both witnesses also acknowledged that Arnold had three pending cases involving theft charges at the time of this incident. Both witnesses explained that Arnold had received no assurances or promises regarding those charges. Arnold indicated that those cases had been resolved prior to this trial and that she had been sentenced

---

[2] Arnold's testimony about her prior contacts with Appellant was given in response to questions about how she recognized Appellant's voice over the phone and knew that the number she dialed in the presence of Sergeant Hopkins belonged to Appellant. N.T., 9/2/15, at 51-52.

to probation. She further acknowledged that she could have been sentenced to a period of incarceration for those charges.

In addition to the four theft cases discussed at trial, Arnold also had four older convictions for theft offenses: one in 1996, two in 1998, and one in 2001. Prior to trial, [Appellant] filed a Motion in Limine in which he asked the Court to allow him to introduce evidence of all of the theft cases in Arnold's criminal history for impeachment purposes pursuant to Pa.R.E. 609. [The trial court] denied [Appellant's] request to introduce the 1996, 1998, and 2001 convictions. As indicated above, Arnold was questioned regarding the four more recent convictions at trial.

[On September 2, 2015, the jury convicted Appellant of one count of Possession With Intent to Deliver a Controlled Substance and one count of Criminal Use of a Communication Facility for Appellant's use of his cellphone to arrange the sale of crack cocaine.]

[Appellant] appeared for sentencing on October 28, 2015. At Sentencing, [Appellant] presented various information regarding his education and family background. The Court was informed of [Appellant's] work history and the fact that he had ceased working upon his arrest and the birth of his child eight months earlier. Since the child's birth, [Appellant] had been a stay-at-home father while the child's mother worked. [Appellant] also informed that Court that he was engaged to the child's mother. [Appellant] asked the Court to impose a local sentence so that he could be eligible for the work-release program which would enable him to provide for his family.

At Sentencing, the Commonwealth commented on [Appellant's] prior record, which included drug offenses. The District Attorney also noted the disrespect shown by [Appellant] toward the Court as exhibited by his pattern of showing up late for various Court appearances, including jury selection in [the instant] case. In addition, [Appellant] had approximately eight probation and parole violations.

Prior to Sentencing, [the trial court] reviewed the Presentence Investigation. [The trial court] imposed a sentence of a minimum of one year and a maximum of three years in a state correctional institution. [Appellant's] RRR1 eligibility was set at nine months and he received credit for time served from October 15, 2014 to October 24, 2014.

Trial Court Opinion, filed 3/4/16, at 2-7.

On November 5, 2015, Appellant filed a Post-Sentence Motion, which the trial court denied on March 4, 2016. Appellant timely appealed.

On appeal, Appellant raises the following four issues, *verbatim*:

1. Did the Trial Court err by denying the Appellant's Motion *in Limine* requesting leave to impeach a Commonwealth witness with convictions for crimes of dishonesty outside the previous ten (10) years, in accordance with Pa.R.E. 609.

2. Did the Trial Court err by denying the Appellant's claim regarding overruling the timely objection of the Appellant's counsel, by not granting a mistrial, or in the alternative, by not giving a curative instruction to the Jury, and by permitting the Commonwealth to offer testimony to the Jury regarding the witness's previous contacts with the Appellant and that she had received contact information of the Appellant through a friend.

3. Did the Trial Court err by denying the Appellant's claim that based on the testimony and evidence offered by the Commonwealth, the Jury did not have sufficient evidence to convict the Appellant.

4. Did the Trial Court erred [*sic*] by denying the Appellant's claim that the Sentencing Judge did not take into consideration the requisite factors when imposing the Appellant's sentence.

Appellant's Brief at 6.

## **Impeachment of Arnold**

In his first issue, Appellant avers that the trial court erred by only allowing Appellant to use Arnold's recent criminal history as impeachment evidence at trial and not the convictions that were more than ten years old. Appellant's Brief at 13-16.

It is well settled that "[t]he admission of evidence is within the sound discretion of the trial court, and will be reversed on appeal only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Miles**, 846 A.2d 132, 136 (Pa. Super. 2004) (*en banc*) (citation omitted). Abuse of discretion requires a finding of misapplication of the law, a failure to apply the law, or judgment by the trial court that exhibits bias, ill-will, prejudice, partiality, or was manifestly unreasonable, as reflected by the record. **Commonwealth v. Montalvo**, 986 A.2d 84, 94 (Pa. 2009).

The Honorable John C. Tylwalk has authored a comprehensive, thorough, and well-reasoned Opinion, citing to the record and relevant case law in addressing Appellant's claim. After a thorough review of the record, the briefs of the parties, and the applicable law, we affirm on the basis of the trial court's Opinion, which notes that (i) Pa.R.E. 609 dictates that convictions which are more than ten years old are only admissible where their probative value substantially outweighs their prejudicial effect; (ii) the four oldest convictions were "well outside of the ten-year range" and not "reflective of Arnold's veracity a the time of the trial" in the instant case; and (iii) the probative value of the four oldest charges was minimal where the trial court permitted Appellant to impeach Arnold using the four recent convictions and he did so at length on cross-examination. Trial Court Opinion, at 7-10.

**Arnold's Prior Contact with Appellant**

In his second issue, Appellant raises a number of claims regarding Arnold's testimony at trial that she previously called Appellant and visited his home. As discussed *supra*, this testimony was in response to questions about how Arnold was able to identify Appellant as the individual with whom she spoke over the phone to arrange the drug buy. At no point during her testimony did she elaborate on the nature of her prior contact with Appellant or testify that she had purchased drugs or engaged in criminal activity with Appellant on previous occasions. Nonetheless, Appellant argues that any mention of prior contact, without an adequate "non-nefarious" explanation from the Commonwealth, impermissibly permitted the jury to "infer and surmise previous [criminal] dealings" that prejudiced Appellant. Appellant's Brief at 18.

We begin by noting that Appellant improperly presented as a single argument three separate issues regarding Arnold's testimony about her prior contact with Appellant: (i) did the trial court err in overruling his timely objection to this portion of Arnold's testimony; (ii) did the trial court err in not declaring a mistrial following this portion of Arnold's testimony; and (iii) did the trial court err in not giving a curative instruction to the jury. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). We nonetheless address each argument in turn.

As to Appellant's first claim, that the trial court erred in overruling his objection and admitting the portion of Arnold's testimony about her prior contact with Appellant, we reiterate that "[t]he admission of evidence is within the sound discretion of the trial court, and will be reversed on appeal only upon a showing that the trial court clearly abused its discretion." *Miles*, 846 A.2d at 136. After a thorough review of the record, the briefs of the parties, the applicable law, and the comprehensive and well-reasoned Opinion of the trial court, we conclude that there is no merit to Appellant's claim. Accordingly, we affirm on the basis of the trial court's Opinion, which found that (i) the testimony about Arnold's prior contact with Appellant was relevant to establish the background of the case and to explain how Arnold was able to identify Appellant; (ii) nothing in the testimony suggested that Arnold previously used the phone number to purchase drugs from Appellant; (iii) Appellant was not unfairly prejudiced by the testimony. Trial Court Opinion, at 10-12.

Regarding Appellant's mistrial claim, we begin by noting that Appellant avers that trial counsel requested a mistrial during Arnold's testimony about her prior contact with Appellant, and that the trial court denied the request. Appellant's Brief at 8. Our examination of the record, however, shows only an off-the-record discussion, the details of which were not provided to this Court. N.T., 9/2/15, at 51-52. Therefore, absent a timely, on-the-record motion for a mistrial, our review is limited to determining whether the trial

court should have declared a mistrial *sua sponte*. **See** Pa.R.Crim.P. 605(B); **Commonwealth v. Stewart**, 317 A.2d 616, 618-19 (Pa. 1974).

It is within the trial court's discretion to declare a mistrial *sua sponte* for reasons of manifest necessity, and we will review such a ruling to determine "whether the trial court properly exercised its discretion[.]" **Stewart**, 317 A.2d at 618-19.

After a thorough review of the record, the briefs of the parties, the applicable law, and the comprehensive and well-reasoned Opinion of the trial court, we conclude that there is no merit to Appellant's claim. Accordingly, we affirm on the basis of the trial court's Opinion, which found that (i) the record reflects no request for a mistrial; and (ii) there was no manifest necessity which would have warranted the trial court declaring a mistrial *sua sponte*. Trial Court Opinion, at 10-12.

Finally, we must dismiss Appellant's argument about the trial court's failure to give a curative instruction because Appellant's Brief contains neither case law nor argument on the issue. Therefore, we find it waived. **See Harkins v. Calumet Realty Co.**, 614 A.2d 699, 703 (Pa. Super. 1992) (finding that an appellant waives issues raised in a Brief's Statement of Questions Involved but not developed in the Brief's argument section).

## Sufficiency of the Evidence

In his third issue, Appellant avers that the evidence was insufficient to uphold his convictions. Evidentiary sufficiency is a question of law; thus, our

standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Diamond,*** 83 A.3d 119, 126 (Pa. 2013).

Although Appellant raises a challenge to the sufficiency of the evidence, he makes no claim that the Commonwealth has failed to prove any specific element or offense. Rather, Appellant argues that the testimony of Arnold cannot provide proof beyond a reasonable doubt that he was the person who sold her the drugs because her testimony was not corroborated by other witnesses or forensic evidence.[3] Appellant's Brief at 18-20. The law regarding the need for corroboration of witness testimony is to the contrary.

Our Supreme Court has held that the uncorroborated testimony of a single witness is sufficient to establish the elements of a crime, if believed by the trier of fact. ***See, e.g., Commonwealth v. Faulcon***, 301 A.2d 375, 376 (Pa. 1973) (concluding that the testimony of an alleged accomplice was sufficient evidence to sustain murder and conspiracy convictions). ***See also Commonwealth v. Antidormi***, 84 A.3d 736, 757 (Pa. Super. 2014) (concluding that the testimony of a single witness was sufficient to sustain persons not to possess firearms conviction).

---

[3] Appellant purports to challenge only the sufficiency of the evidence against him. To the extent that Appellant's averments about Arnold's credibility instead challenge the weight of the evidence in this case, Appellant waived such a claim by failing to raise it in his Pa.R.A.P. 1925(b) Statement. ***See Commonwealth v. Castillo***, 888 A.2d 775, 780 (Pa. 2005).

After a thorough review of the record, the briefs of the parties, the applicable law, and the comprehensive and well-reasoned Opinion of the trial court, we conclude that there is no merit to Appellant's claim. Accordingly, we affirm on the basis of the trial court's Opinion, which found that the evidence was sufficient to establish that it was Appellant whom Arnold called and from whom Arnold later purchased crack cocaine. Trial Court Opinion at 12-15.

## Discretionary Aspects of Sentencing

In his fourth issue, Appellant avers, in a scant three-paragraph argument containing no citations to supporting authority, that the trial court's sentence constituted a manifest abuse of discretion where the trial court improperly considered two categories of biographical data that "were not criminal convictions." These included one or more arrests in West Virginia where the disposition was then "unknown," and the fact that Appellant had additional charges pending in Pennsylvania at the time of sentencing. Appellant's Brief at 20-21.

As presented, this claim challenges the discretionary aspects of sentencing. *See, e.g., Commonwealth v. Anderson*, 830 A.2d 1013, 1016 (Pa. Super. 2003) (noting that a challenge to the court's consideration of improper factors at sentencing refers to the discretionary aspects of sentencing). A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. *Commonwealth v. Phillips*,

946 A.2d 103, 112 (Pa. Super. 2008). Prior to reviewing such a claim on its merits:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.
>
> When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code . . . .
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Id.* (citations and quotations omitted). *See also* Pa.R.A.P. 2119(f).

Appellant complied with the first three requirements by (i) filing a timely Notice of Appeal; (ii) preserving his sentencing issues by filing a Petition to Reconsider Sentence; and (iii) including a separate Rule 2119(f) Statement in his Brief to this Court.

As to the final requirement, an appellant raises a substantial question when he avers an excessive sentence due to the court's reliance on impermissible factors. *Commonwealth v. McNabb*, 819 A.2d 54, 56-57 (Pa. Super. 2003). Accordingly, Appellant's averment that the court relied

on improper factors presents a substantial question, and we will review that claim on the merits.

We turn to the merits of Appellant's claim, bearing in mind the following standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citation omitted). Where, as here, the sentence imposed is within the sentencing guidelines, we will not vacate the sentence imposed unless we find that "the case involves circumstances where the application of the guidelines would be clearly unreasonable[.]" 42 Pa.C.S. § 9781(c)(2).

Finally, this Court has previously stated that even if a trial court considers an inappropriate factor at sentencing, this Court will nonetheless uphold the sentence if "the court offered significant other support" for imposing a given sentence. *Commonwealth v. P.L.S.,* 894 A.2d 120, 133 (Pa. Super. 2006).

In the instant case, as the trial court explained in its March 4, 2016 Opinion:

> Prior to Sentencing, [the trial court] fully reviewed the information set forth in [Appellant's] Presentence Investigation. At sentencing, [the trial court] noted various factors which

dictated against [Appellant] receiving a local sentence. [The trial court] noted that [Appellant] had four prior convictions, two cases with "disposition unknown" in West Virginia, and pending resisting arrest/escape charges here[,] which resulted from a traffic stop. Some of the prior convictions were for drug offenses, including a drug felony. In addition, [Appellant] had at least seven, or possibly eight, probation/parole violations. [The trial court] noted that the sentences imposed in the past had not dissuaded [Appellant] from criminal conduct and that it was time that he take responsibility for his actions.

[Appellant] complains that it was improper for [the trial court] to take his pending charges and West Virginia record into account at Sentencing. These items were **not** included in the calculation of his prior record score and were relevant to [the trial court's] consideration of [Appellant's] character, his rehabilitative needs, and the continuation of his criminal behavior. [The trial court believes that it] based the sentence on appropriate considerations and that the sentence [it] imposed was justified under these circumstances.

Trial Court Opinion, at 17 (emphasis added).

Even assuming, *arguendo*, that the trial court erred in considering Appellant's pending charges and his West Virginia Record, he would still not be entitled to have his sentence vacated. *P.L.S.*, 894 A.2d at 133. The trial court offered significant other support for the sentence imposed, and stated that it did not consider the challenged information in calculating Appellant's Prior Record Score. Finally, the trial court imposed a sentence within the standard guideline range with RRR-I eligibility after only nine months. In light of the several legitimate, individualized factors the court considered that did not involve Appellant's West Virginia charges or the pending charges in Pennsylvania, we cannot conclude that Appellant's relatively light sentence was "clearly unreasonable."

J. S69021/16

Accordingly, we affirm the trial court's October 28, 2015 Judgment of Sentence.

The parties are instructed to attach a copy of the trial court's March 4, 2016 Opinion to all future filings.

Judgment of Sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/7/2016

- 15 -

Circulated 11/17/2016 02:54 PM

# IN THE COURT OF COMMON PLEAS OF LEBANON COUNTY PENNSYLVANIA

## CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYKLVANIA | : | NO. CP-38-CR-114-2015 |
| | : | |
| v. | : | |
| | : | |
| CARL PATRICK | : | |

**APPEARANCES:**

NICHOLE EISENHART, ESQUIRE       FOR THE COMMONWEALTH
DEPUTY DISTRICT ATTORNEY

KEVIN DUGAN, ESQUIRE       FOR CARL PATRICK
FEATHER & FEATHER, P.C.

## OPINION, TYLWALK, P.J., MARCH 4, 2016.

After a jury trial on September 2, 2015, Defendant was convicted of one count of Possession With Intent to Deliver a Controlled Substance[1] and one count of Criminal Use of a Communication Facility[2] for selling crack cocaine with the use of a cellphone on the evening of June 24, 2014. He has filed a Post-Sentence Motion which is presently before us for resolution.

---

[1] 35 P.S. 780-113(a).

[2] 18 Pa.C.S.A. §7512(a).

1

At the trial, Sergeant Brett Hopkins of the Lebanon County Drug Task Force testified that the charges arose from an investigation using a confidential informant, Deborah Arnold. Hopkins explained that individuals often offered to cooperate with the Drug Task Force when they have criminal charges pending against them. He acknowledged that Arnold did have three pending theft charges at the time of the investigation, but noted that no promises or assurances had been made to her regarding the disposition of those charges. Throughout the course of the investigation, Arnold had given information to the Drug Task Force which Hopkins had been able to verify.

Hopkins explained that Arnold had contacted the Drug Task Force and informed them that she could purchase drugs from an individual known to her as "Loso" and that Hopkins had arranged to meet with Arnold on the evening of June 14, 2014. He explained that they planned to conduct a "controlled buy" during which Arnold would arrange to buy drugs from "Loso." Arnold would contact "Loso" via phone call in Hopkins' presence and Hopkins would accompany her to the location where she was to meet this individual and observe as much as possible of the transaction. Hopkins showed Arnold a Pennsylvania driver's license photograph of Defendant and Arnold identified him as the person she knew as "Loso."

2

After Arnold arrived to meet with Hopkins, she provided the officers with a phone number she had for Defendant. She then placed a call to that number. Hopkins observed that it was the same number she had given to him. At first there was no answer, but Arnold received a return call shortly after placing the initial call. Hopkin heard Arnold tell the caller that she wanted "100." He explained that "100" is an increment of crack cocaine that costs $100.00. When Arnold got off the phone, she told Hopkins that she had been directed to go to 1328 Lehman Street to meet Defendant to obtain the drugs. Arnold was then strip searched by Sarah Stager, the director of Central Booking. Stager testified that she conducted a thorough search of Arnold's clothing and person and found no contraband. Hopkins then provided Arnold with $100.00 to purchase the cocaine. He had previously recorded the serial numbers of the currency.

Hopkins and Arnold then drove to the Lehman Street address and parked on Fourteenth Street. Almost immediately, Defendant pulled up in a Fiat on the opposite side of the street. After Defendant had exited his vehicle, Arnold got out of the vehicle and went to meet him. Hopkins observed the two go inside the rear apartment door at 1328 Lehman Street. Within a minute, Arnold returned to the car, and handed Hopkins a plastic baggy containing a substance which was later determined to be crack cocaine. When they returned to the station, Arnold

3

was strip searched again. Hopkins explained that the baggie was not subjected to DNA or fingerprint testing due to the existence of other evidence regarding the drug transaction, the cost of such testing, and the wrinkled condition of the baggie.

Hopkins explained that the Drug Task Force was involved in multiple ongoing investigations which involved Arnold. Defendant was not arrested for this incident until several months later so that the integrity of the other investigations would not be compromised. When he was arrested, Defendant was in possession of a cellphone which was determined to be the one used during the June 24, 2014 transaction with Arnold.

Arnold also testified at the trial. Over Defendant's objection, she explained that she had used the phone number she had given to Hopkins in order to reach Defendant prior to June 24, 2014 and that she had also been to the Lehman Street address before that date. When Defendant returned her call on June 24, 2014, she recognized his voice. She told him that she wanted "100" and he told her to come to his residence. She explained that Defendant lived in an apartment building and that she had entered directly into his apartment through a rear door. She recalled that there was someone cooking in the kitchen of the apartment, but

4

that she did not come into contact with anyone other than Defendant either inside or outside of the apartment.

Both Hopkins and Arnold acknowledged that Arnold had a 2009 conviction for retail theft. Arnold testified that she had served three months incarceration for that conviction. Both witnesses also acknowledged that Arnold had three pending cases involving theft charges at the time of this incident. Both witnesses explained that Arnold had received no assurances or promises regarding those charges. Arnold indicated that those cases had been resolved prior to this trial and that she had been sentenced to probation. She further acknowledged that she could have been sentenced to a period of incarceration for those charges.

In addition to the four theft cases discussed at trial, Arnold also had four older convictions for theft offenses: one in 1996, two in 1998, and one in 2001. Prior to trial, Defendant filed a Motion in Limine in which he asked the Court to allow him to introduce evidence of all of the theft cases in Arnold's criminal history for impeachment purposes pursuant to Pa.R.E. 609. We denied Defendant's request to introduce the 1996, 1998, and 2001 convictions. As indicated above, Arnold was questioned regarding the four more recent convictions at trial.

5

Defendant appeared for sentencing on October 28, 2015. At Sentencing, Defendant presented various information regarding his education and family background. The Court was informed of Defendant's work history and the fact that he had ceased working upon his arrest and the birth of his child eight months earlier. Since the child's birth, Defendant had been a stay-at-home father while the child's mother worked. Defendant also informed that Court that he was engaged to the child's mother. Defendant asked the Court to impose a local sentence so that he could be eligible for the work-release program which would enable him to provide for his family.

At Sentencing, the Commonwealth commented on Defendant's prior record, which included drug offenses. The District Attorney also noted the disrespect shown by Defendant toward the Court as exhibited by his pattern of showing up late for various Court appearances, including jury selection in this case. In addition, Defendant had approximately eight probation and parole violations

Prior to Sentencing, we had reviewed the Presentence Investigation. We imposed a sentence of a minimum of one year and a maximum of three years in a state correctional institution. Defendant's RRRI eligibility was set at nine months

6

and he received credit for time served from October 15, 2014 to October 24, 2014.

Defendant has filed a Post-Sentence Motion requesting relief on several bases. He argues that we erred in denying his request to impeach Arnold on the basis of her four theft charges from 1996, 1998, and 2001 and in permitting Arnold's testimony of her previous contacts with Defendant. He also challenges the sufficiency of the evidence to support the jury's verdict and assigns error to our imposition of a state sentence. This Motion is presently before us for resolution.

## Arnold's Prior Record

With regard to the use of a witness' criminal record at trial for impeachment purposes, Pa.R.E. 609 provides, in part:

Rule 609. Impeachment by Evidence of a Criminal Conviction

(a) In General. For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement.

(b) Limit on Using the Evidence After 10 Years. This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:

(1) its probative value substantially outweighs its prejudicial effect; and

7

(2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Pa.R.E. 609(a), (b).

The decision of whether to admit convictions outside of the ten-year period is within the discretion of the trial judge. *Commonwealth v. Randall,* 528 A.2d 1326 (Pa. 1987). There is generally no distinction to be made between a defendant and a witness in the application of this Rule. *Commonwealth v. Howard,* 823 A.2d 911 (Pa. Super. 2003).

> In making the determination as to the admissibility of a prior conviction for impeachment purposes, the trial court should consider: (1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; (2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility.

*Commonwealth v. Randall, supra* at 1328, citing *Commonwealth v. Roots,* 393 A.2d 364, 367 (Pa. 1978).

Here, Arnold had four actions involving theft offenses which were within the ten-year period prior to trial and four convictions which were outside that

8

time period. All of these offenses involved dishonesty. Pursuant to Rule 609, her latter four convictions were admitted. However, we denied Defendant's request to introduce the four prior convictions as we found that those were too remote in time to be probative in this case.

We do not believe that we erred in limiting Defendant to Arnold's four most previous convictions. The four earliest convictions were well outside of the ten-year range. There was a gap of eight years between the four earliest and the four latter convictions. The first offense was committed in 1996. We do not believe events which occurred such a long time ago were reflective of Arnold's veracity at the time of the trial in this case as they would not have provided a legitimate reason for her testimony to be discredited at this point in time. Moreover, we find nothing regarding Arnold's age and/or circumstances which would bear on her credibility at present. By the time of trial, she was acting as a confidential informant whose actions were thoroughly scrutinized by members of the Drug Task Force and she had provided various information which had been corroborated by Hopkins throughout the time period relevant to this matter.

We also fail to see any great need for this evidence at trial as the four latter convictions provided Defendant with ample means to attack Arnold's credibility. Defense counsel questioned Arnold at length about those four convictions and

9

the Commonwealth also brought this information up. Arnold also acknowledged that three of those cases were still pending at the time of the investigation and that she had received a sentence of probation rather than incarceration. This testimony fully provided Defendant with a basis upon which to argue bias on the part of Arnold. We do not believe that the admission of the earlier convictions would have enhanced his defense and find that this was an appropriate ruling on this issue.

### Testimony Regarding Arnold's Previous Contacts with Defendant

Defendant also complains that we permitted Arnold to testify about her prior contacts with Defendant at trial. Arnold testified that she had obtained Defendant's cell number from a friend, that she had used that number to contact Defendant previously, and that she had been to Defendant's residence prior to June 24, 2014. She also noted that she recognized Defendant's voice when she spoke to him over the phone on June 24, 2014 as a result of those previous contacts. He assigns error to our overruling his objections to this testimony and in our failure to declare a mistrial as the result of its admission.

Defendant complains that this testimony was highly prejudicial to him as the Commonwealth failed to offer any innocent explanation for Arnold's previous contacts with Defendant and the jury was left to infer that those contacts

10

involved previous drug transactions. We agree with Defendant that prior criminal conduct cannot be introduced as substantive evidence of his guilt to the charges at issue. *Commonwealth v. West,* 656 A.2d 519, 521 (Pa. Super. 1995). When ruling on an objection on this basis, a court is required to determine whether the jury could reasonably infer from the facts presented that the defendant had engaged in prior criminal conduct. *Id.*

Relevant evidence is admissible unless its probative value is outweighed by the danger of unfair prejudice. Pa.R.E. 403. "Unfair prejudice" means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially. Comment - Pa.R.E. 403. Evidence is not to be excluded merely on the basis that it is harmful to a defendant. *Commonwealth v. Dillon,* 925 A.2d 131 (Pa. 2007). "Exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. Page*, 965 A.2d 1212, 1220 (Pa. Super. 2009).

When an event prejudicial to a defendant occurs at trial, he may either object, request curative instructions, or move for a mistrial. *Commonwealth v. Boring,* 684 A.2d 561, 568 (Pa. Super. 1996). A timely motion for a mistrial must be made at the time of the prejudicial event. *Id.* If the defendant does not make

11

a timely motion, the trial judge may declare a mistrial only for reasons of manifest necessity. Pa.R.Crim.P. 605(B).

After reviewing this testimony, we find nothing which would have diverted the jury's attention from the issues which they were called upon to resolve. Arnold's testimony introduced nothing which would have inflamed the jury such that they would have based their verdict on something other than the facts of Arnold's contact with Defendant on June 14, 2014.

This testimony was relevant to establish the background of the events of this particular drug transaction and to confirm Defendant's identity as the person known to Arnold as "Loso." There was nothing to indicate that Arnold had used the phone number in the past in order to obtain drugs from Defendant and there was no reference to any prior criminal conduct on the part of Defendant. We do not believe that this testimony was in any way unfairly prejudicial to Defendant and find that it was properly admitted at trial. Defendant did not move for a mistrial at trial and we find no manifest necessity which would have warranted our doing so *sua sponte*.

### Sufficiency of Evidence

Defendant next charges that the evidence presented by the Commonwealth at trial was insufficient to support his convictions. In resolving a

12

challenge to the sufficiency of the evidence, we must view the evidence at trial and all reasonable inferences drawn from that evidence in the light most favorable to the Commonwealth as the verdict winner and determine whether that evidence was sufficient to establish all the elements of the offenses charges beyond a reasonable doubt. *Commonwealth v. Fears,* 836 A.2d 52 (Pa. 2003). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. Lippert,* 887 A.2d 1277 (Pa. Super. 2005). The court may not weigh the evidence and substitute its judgment for that of the fact-finder. *Id.*

Section 780-113(a)(30) of the Controlled Substance, Drug, Device and Cosmetic Act prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance." 35 P.S. 780-113(a)(30). Defendant notes that the evidence offered by the Commonwealth with regard to the drug transaction at issue relied solely on Arnold's testimony. Defendant lodges various complaints with regard to that testimony. He points to the absence of any other witness to the drug transaction, Arnold's criminal history, the pending charges at the time of the incident, and the inadequacy of the strip search. He also argues that no DNA or fingerprint tests were conducted on the

13

baggie Arnold gave to Hopkins and the fact that Defendant was not found to be in possession of the recorded currency at the time of his arrest.

Arnold made arrangements to purchase crack cocaine in Hopkins' presence and Arnold testified that she obtained the crack cocaine directly from Defendant. All of the information provided by Arnold was verified; Arnold was out of Hopkins' view for less than a minute during the transaction. Stager testified that she conducted a thorough search of Arnold's person and clothing, and Arnold was found to be free of contraband immediately prior to leaving to meet Defendant. Viewing this evidence in the light most favorable to the Commonwealth, we find that there was sufficient evidence upon which the jury could have found Defendant guilty of PWID. The jury was free to determine the credibility of Arnold's testimony and obviously believed her testimony to be truthful. The Commonwealth also presented evidence to explain the issues raised by Defendant and the jury likewise found these explanations to be credible.

Defendant was also convicted of Criminal Use of a Communication Facility pursuant to 18 Pa.C.S.A. §7512(a):

> § 7512. Criminal use of communication facility
>
> (a) Offense defined.--A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which

14

constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.

18 Pa.C.S.A. §7512(a). The testimony established that Defendant committed PWID, a violation of the Controlled Substance Act, when he sold crack cocaine to Arnold. Hopkins and Arnold testified Defendant's cellphone enabled him to arrange this drug transaction and he was found to be in possession of the cellphone with this number at the time of his arrest. We believe this evidence sufficiently supports the jury's verdict on this count and Defendant is not entitled to relief on this basis.

### Sentence

The sentence imposed on a defendant is within the discretion of the sentencing court. *Commonwealth v. Whitman,* 880 A.2d 1250 (Pa. Super. 2005). In determination an appropriate sentence, the court must consider that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. 42 Pa.C.S.A. §9721(b). The sentencing court must also consider the

15

sentencing guidelines. 42 Pa.C.S.A. §9721(b); 204 Pa. Code §303.1 *et seq.* The sentencing guidelines are considered advisory, and the sentencing court is still charged with considering them and determining whether to apply them or whether circumstances of the individual case require departure from them. *Commonwealth v. Robertson,* 874 A.2d 1200 (Pa. Super. 2005).

When a court has the benefit of a presentence investigation report, it is presumed that the court had the relevant character information for the defendant. *Commonwealth v. Fullin,* 892 A.2d 843 (Pa. Super. 2006). In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing judge's discretion, as he or she is in the best position to measure the factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference. *Commonwealth v. Andrews,* 720 A.2d 764 (Pa. Super. 1998).

Prior to Sentencing, we fully reviewed the information set forth in Defendant's Presentence Investigation. At Sentencing, we noted various factors which dictated against Defendant receiving a local sentence. We noted that Defendant had four prior convictions, two cases with "disposition unknown" in West Virginia, and pending resisting arrest/escape charges here which resulted

16

from a traffic stop. Some of the prior convictions were for drug offenses, including a drug felony. In addition, Defendant had at least seven, or possibly eight, probation/parole violations. We noted that the sentences imposed in the past had not dissuaded Defendant from criminal conduct and that it was time that he take responsibility for his actions.

Defendant complains that it was improper for us to take his pending charges and West Virginia record into account at Sentencing. These items were not included in the calculation of his prior record score and were relevant to our consideration of Defendant's character, his rehabilitative needs, and the continuation of his criminal behavior. We believe that we based the sentence on appropriate considerations and that the sentence we imposed was justified under these circumstances.

For these reasons, we will deny Defendant's Motion and will enter an appropriate Order.