**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**David PAGE, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 29, 2008.
Filed Feb. 3, 2009.

Harry O. Falls, New Castle, for appellant.

John J. Bongivengo, Dist. Atty., for Com., appellee.

BEFORE: FORD ELLIOTT, P.J., FREEDBERG, J. and McEWEN, P.J.E.

OPINION BY FREEDBERG, J.:

¶ 1 This is an appeal from judgment of sentence entered by the Court of Common Pleas of Lawrence County after a jury convicted David Page of two counts of aggravated indecent assault, 18 Pa.C.S.A. § 3125(a)(7) and (b), one count of indecent assault, 18 Pa.C.S.A. § 3126(a)(7), and one count of corruption of minors, 18 Pa.C.S.A. 6301(a). Appellant was sentenced to a term of incarceration of five to ten years. Appellant contends that the trial court erred when it failed to suppress a statement made by Appellant, when it permitted evidence of prior bad acts, when it allowed the Commonwealth to amend the information after close of the evidence and prior to closing arguments, and when it allowed the Commonwealth to discuss prior bad acts of Appellant during its closing argument. We affirm.

¶ 2 Appellant dated the mother of the thirteen year old female victim for approximately eight years. Notes of Testimony, 6/12/2007, at 102. Appellant resided with them for the majority of the time during which he was dating the mother, moving in when the child was approximately four years old. *Id.* The girl testified that Appellant was like a father to her, and the two often went shopping, played video games, and read together. *Id.* She stated that both her mother and Appellant typically put her to bed, after which her mother would go to bed. At that point, Appellant would come into her room and hurt her. *Id.* at 7. She testified that Appellant "would put his hands down [her] pants and he would caress the inside of [her] thighs .... [and] he would put his fingers inside of [her]." *Id.* at 7–8. This abuse went on

for a number of years and occurred approximately one hundred times while Appellant lived with them. *Id.* at 9, 80.

¶ 3 The child did not report the abuse for a period of time because she was afraid of Appellant after he threatened that both she and her mother would be in trouble if she told anyone what he was doing. *Id.* at 1, 13. On February 17, 2005, the threats escalated when Appellant came into the child's room after she was asleep and told her that he would "cut [her] throat if [she] said anything." *Id.* at 11. Appellant tried to touch the girl that night, but she screamed and he stopped. *Id.* at 12–13. The abuse then stopped. In November 2007, Appellant told the victim he was going to buy her a cell phone. *Id.* at 14. Afraid that the gift meant Appellant was going to touch her again, she screamed and told her mother about the years of abuse by Appellant. *Id.* The child was interviewed by a Lawrence County Children Youth and Service caseworker and a representative from the District Attorney's office two days later.

¶ 4 Appellant agreed to meet with Corporal Scott Patterson from the Pennsylvania State Police on February 3, 2006, to discuss the allegations against him. *Id.* at 37–38. Appellant arrived at the New Castle police station by means of his own transportation, and the interview began at approximately 9:45 a.m. *Id.* at 40. Corporal Patterson began the session by reading Appellant the *Miranda* rights. Appellant, who dropped out of school in the ninth grade, asked a question about the availability of a public defender. Corporal Patterson testified: "I told him that if he would qualify for that and he is charged, a public defender would be appointed for him, and that would depend on his income." Notes of Testimony, Suppression

Hearing, at 11. Appellant stated that he understood his rights and signed a waiver form. *Id.* at 43–45.

¶ 5 At first, Appellant denied he sexually abused the girl, but, at approximately 12:15 p.m., he admitted to touching her inappropriately. *Id.* at 45–46. Corporal Patterson handwrote a statement summarizing Appellant's statements, which he reviewed with Appellant line-by-line for accuracy. *Id.* at 46–48. Appellant verified the information in the statement was correct and signed the statement. Appellant was arrested on March 28, 2006, for the sexual abuse of the girl.

¶ 6 Appellant filed a motion to suppress his statement on October 20, 2006. After a hearing, Appellant's motion was denied on January 29, 2007. A jury trial began on June 11, 2007. On June 13, 2007, Appellant was found guilty of two counts of aggravated indecent assault, one count of indecent assault, and one count of corruption of minors. On February 26, 2008, Appellant was sentenced to five to ten years' imprisonment. This appeal followed.[1]

¶ 7 Appellant raises four issues in his brief. Appellant claims that the trial court incorrectly denied his motion to suppress the statement he gave to Corporal Patterson. He also claims that the trial court should not have permitted the Commonwealth to introduce evidence about his prior bad acts or, alternatively, it should have given a cautionary instruction concerning the evidence. Appellant claims that the trial court erred in permitting the Commonwealth to comment on prior bad acts during closing arguments. Finally, Appellant contends that the Commonwealth should not have been allowed to amend the

---

1. Appellant filed a timely concise statement of errors complained of on appeal, pursuant to Pa.R.A.P.1925(b), on March 25, 2008. The trial court filed a 1925(a) statement of reasons incorporating its earlier rulings and opinion on May 5, 2008.

information after the close of the evidence and prior to closing arguments.

¶ 8 Appellant argues that the trial court erred when it denied his motion to suppress. In reviewing an appeal of a denial of a motion to suppress, the appropriate standard of review was set forth in *Commonwealth v. Grundza*, 819 A.2d 66, 67 (Pa.Super.2003) (internal quotations omitted), *citing Commonwealth v. Reppert*, 814 A.2d 1196 (Pa.Super.2002), as follows:

> Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

■ ¶ 9 At the outset, we note that the trial court determined that the trooper's interview of Appellant did not constitute custodial interrogation. Resolution of whether this determination was correct is critical to disposition of Appellant's argument for suppression.

¶ 10 In finding that the interview did not constitute custodial interrogation, the trial court cited the following factors:

> "A. Corporal Patterson did not pick up the defendant in his cruiser, but rather defendant arrived at the barracks via his own transportation.
>
> B. Detective Disque prearranged this interview, which demonstrates defendant was a willing participant.
>
> C. Defendant was never handcuffed nor was there any restraint on defendant's freedom of movement.

> D. The interview lasted only three and one half (3.5) hours which included preparation for an administration of the polygraph test—not just questioning—which this court finds is not excessively long.
>
> E. Defendant was not compelled to stay at the barracks, nor was he required to answer any questions presented to him. In the waiver form that Corporal Patterson read to defendant, and defendant subsequently signed indicating he understood its terms, it clearly stated that defendant was entitled to representation of counsel before questioning. Additionally, the warning form stated that defendant could stop the questioning at any time and could not be forced to continue.
>
> F. Corporal Patterson was dressed in plain clothes and was the sole officer in the interview room when defendant was interviewed and gave the inculpatory statement. Additionally, Corporal Patterson's tone of voice was matter-of-fact, as there were no threatening or intimidating communications or manifestations. This court finds that these facts illustrate the potentially coercive aura of a police barracks was eliminated.
>
> G. There were no charges pending against defendant in which the officer could have used as a bargaining chip to draw out incriminating information, nor was there any credible evidence presented to this court indicating Corporal Patterson influenced defendant to offer incriminating statements." Order of January 26, 2007.

Appellant was allowed two breaks during the interview process. At the conclusion of the interview, he was allowed to leave. The arrest for these charges occurred almost two months after the interview.

■ ¶ 11 "The test for determining whether a suspect is in custody is whether the suspect is physically deprived of his

freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted." *Commonwealth v. Eichinger,* 591 Pa. 1, 915 A.2d 1122, 1134 (2007); *Commonwealth v. McCarthy,* 820 A.2d 757, 759–760 (Pa.Super.2003). This standard is an objective one, which takes into consideration the reasonable impression on the person being interrogated. *McCarthy,* 820 A.2d at 759–760 (citations omitted). The test "does not depend upon the subjective intent of the law enforcement officer interrogator," but instead "focuses on whether the individual being interrogated reasonably believes his freedom of choice is being restricted." *Commonwealth v. Hayes,* 755 A.2d 27, 33–34 (Pa.Super.2000), *quoting Commonwealth v. Gibson,* 553 Pa. 648, 720 A.2d 473, 480 (1998). The fact that the police may have "focused" on the individual being questioned or that the interviewer believes the interviewee is a suspect is irrelevant to the issue of custody. *Commonwealth v. Smith,* 575 Pa. 203, 836 A.2d 5, 18 (2003). "A person is considered to be in custody for the purposes of Miranda when the officer's show of authority leads the person to believe that she was not free to decline the officer's request, or otherwise terminate the encounter." *Hayes,* 755 A.2d at 33–34.

¶ 12 Applying these standards, we agree with the determination of the trial court that the interview did not constitute custodial interrogation. Under these circumstances, Appellant did not reasonably believe that his freedom of action or movement was restricted. He had not been arrested. At no time during the interview was he placed in restraints. He was advised that he could terminate the interview at any point. He was advised that he could apply for counsel. He was allowed breaks. The interview was not excessively long. The officer was dressed in street clothes and was the only police officer in the interview room. Appellant was permitted to leave after the interview. That he was not charged for nearly two months after the interview supports the impression that this was a non-coercive, noncustodial atmosphere.

■ ¶ 13 *Miranda* warnings are required only when a defendant is subject to custodial interrogation. *Smith,* 836 A.2d at 18; *Commonwealth v. Fisher,* 564 Pa. 505, 769 A.2d 1116, 1125 (2001). Because Appellant was not in custody, the trooper's reading of the *Miranda* warnings to Appellant was a gratuitous, though appropriate, act.[2]

■ ¶ 14 It is important to note that the *Miranda* decision is based on the Fifth Amendment of the United States Constitution rather than the Sixth Amendment. *Commonwealth v. Arroyo,* 555 Pa. 125, 723 A.2d 162, 164 n. 1 (1999) ("[I]t is important to emphasize that the Federal Constitution "right to counsel" of which a suspect is informed in his Miranda warnings springs not from the Sixth Amendment, but rather from the Fifth Amendment. *See Moran v. Burbine,* 475 U.S. 412, 432, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410, 428 (1986)."). Because Appellant was not undergoing custodial interrogation, he cannot assert a denial of his right to counsel as articulated in *Miranda.* Rather, at the time of his interview, Appellant's right to counsel was based upon the Sixth Amendment of the United States Constitution and Article One, Section Nine of the Constitution of the Commonwealth of Pennsylvania. In *Arroyo,* it was determined that the provisions of the Sixth Amendment and Article

---

**2.** Giving *Miranda* warnings does not convert an investigatory interview into custodial interrogation. *Commonwealth v. Morgan,* 416 Pa.Super. 145, 610 A.2d 1013, 1015, n. 2 (1992).

One, Section Nine, are "coterminous" for purposes of determining when the right to counsel attaches. *Arroyo,* 723 A.2d at 170. "[A] suspect has no Sixth Amendment right to counsel until the first formal charging proceeding has transpired, and it can be said that the formal initiation of adversarial judicial proceedings has occurred." *Id.* at 166, *citing Moran v. Burbine,* 475 U.S. 412, 432, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410, 428 (1986). Thus, the trooper's explanation to Appellant was constitutionally accurate. If charged, he could apply for the assistance of a public defender.[3] Therefore, Appellant was not entitled to the suppression of his statements.

¶ 15 Appellant next contends that the trial court should not have allowed testimony concerning prior bad acts committed by Appellant. In the alternative, Appellant argues that a cautionary instruction should have been given instructing the jury about the limited purpose for which such evidence can be used.

¶ 16 Evidence relating to other crimes, wrongs, or acts of a defendant is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident" if the probative value outweighs the potential prejudice. Pa.R.E. 404(b)(2), (b)(3). When reviewing a claim concerning the admission of evidence, and specifically evidence of a prior bad act by a defendant, the appropriate standard was set forth in *Commonwealth v. Reid,* 571 Pa. 1, 811 A.2d 530, 549 (2002) (internal citations omitted) (emphasis added), as follows:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of that evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

Evidence of prior bad acts committed by a defendant is not admissible solely to show the defendant's bad character or his propensity for committing bad acts. However, evidence of prior bad acts is admissible where there is a legitimate reason for the evidence, such as to establish: 1) motive; 2) intent; 3) absence of mistake or accident; 4) a common scheme or plan; and 5) identity. The evidence may also be admissible to impeach the credibility of a testifying defendant; *to show that the defendant has used the prior bad acts to threaten the victim;* and in situations where the bad acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development.

■ ¶ 17 Appellant complains about the following exchange, which occurred on redirect examination of the child:

Q: Can you describe what [Appellant] is like when he is angry?

A: He likes to hit. He hits my mom a lot.

N.T., 6/12/2007, at 34. Defense counsel objected to this testimony and made a motion for a mistrial. The motion was

---

3. Appellant had full-time employment throughout the relevant time period. N.T., 6/12/2007, at 122.

denied. Counsel then requested a cautionary instruction, which was also denied by the trial court.

¶ 18 Prior to this exchange, the child had stated that the reason she did not report the sexual abuse sooner was that she was afraid of Appellant. *Id.* at 10, 13. The Commonwealth explained during its offer of proof that the purpose of the testimony was to show that Appellant "displayed his anger to [the child] and her entire family over a period of eight years and so that was the basis that this child was afraid and she didn't disclose this information." *Id.* at 35. The Supreme Court of Pennsylvania has recognized that a delay in reporting abuse can affect evaluation of the victim's credibility. *Commonwealth v. Dillon*, 592 Pa. 351, 925 A.2d 131, 138–139 (2007), *citing Commonwealth v. Lane*, 521 Pa. 390, 555 A.2d 1246, 1250 (1989). "Revealing the circumstances surrounding an incident of sexual abuse, and the reasons for the delay, enables the factfinder to more accurately assess the victim's credibility." *Id.* The testimony of Appellant's abuse of the victim's mother was relevant to show the reason for the delay in reporting the abuse, as well as to support the victim's testimony that she feared Appellant and believed that he would carry out the threats he made against her and her mother. *See id.* at 139.

 ¶ 19 Determining that the evidence of physical abuse by Appellant is relevant does not end our inquiry. Evidence, even if relevant, may be excluded if its probative value is outweighed by the potential prejudice. Pa.R.E. 404(b)(3).

> The probative value of the evidence might be outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, pointlessness of presentation, or unnecessary presentation of cumulative evidence. Pa.R.E. 403. The comment to Pa.R.E.

403 instructs that: " 'Unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 cmt. Additionally, when weighing the potential for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect of the proffered evidence. Pa.R.E. 404(b) cmt.

*Dillon*, 925 A.2d at 141. However, "[e]vidence will not be prohibited merely because it is harmful to the defendant." *Id.* "[E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. Owens*, 929 A.2d 1187, 1191 (Pa.Super.2007), *citing Commonwealth v. Broaster*, 863 A.2d 588, 592 (Pa.Super.2004).

 ¶ 20 When evaluating whether evidence of prior acts is so prejudicial that it should be excluded, we must consider the following as set forth in *Dillon*, 925 A.2d at 141:

> Evidence will not be prohibited merely because it is harmful to the defendant. This court has stated that it is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." *Lark*, 543 A.2d at 501. Moreover, we have upheld the admission of other crimes evidence, when relevant, even where the details of the other crime were extremely grotesque and highly prejudicial. *See Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835, 841 (1989) (upholding the trial court's admission of evidence that the defendant had committed a prior rape,

including testimony from the prior rape victim); *see also Commonwealth v. Gordon,* 543 Pa. 513, 673 A.2d 866, 870 (1996) (allowing evidence of defendant's previous sexual assaults).

¶ 21 McCormick, Evidence, § 190 (6th ed.2006), sets forth factors to be considered in performing the probative value-prejudice balancing test as follows:

> [M]ost authority recognizes that the problem is not merely one of pigeonholing, but of classifying and them balancing. In deciding whether the danger of unfair prejudice and the like substantially outweighs the incremental probative value, a variety of matters must be considered, including the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

*See* Packel & Poulin, Pennsylvania Evidence, 3rd ed. § 404–9 p. 237.

 ¶ 22 In the instant case, the victim's testimony about Appellant's physical abuse of her mother was not unduly prejudicial to Appellant. The amount of evidence as to Appellant's physical abuse of the victim's mother did not cross the line in terms of quantity or quality of the evidence. The reference was admitted to explain the victim's delay in reporting; it was not sufficient to "rouse a jury to overmastering hostility." We find no abuse of discretion by the trial court in admitting the testimony.

 ¶ 23 The trial court erred when it refused to give the cautionary instruction requested by Appellant's counsel. During trial, immediately after the victim testified that Appellant hit her mother when he was angry, defense counsel objected. After counsel's motion for a mistrial was denied,

counsel requested a cautionary instruction. The trial court denied the request. Appellant's claim was properly preserved. *See Commonwealth v. Corley* 432 Pa.Super. 371, 638 A.2d 985, 990 (1994); N.T. 6/12/2007, at 35–36.

 ¶ 24 Our courts have long recognized that "evidence of prior criminal acts has the potential for misunderstanding on the part of the jury." *Commonwealth v. Richter,* 551 Pa. 507, 711 A.2d 464, 467 (1998); *Commonwealth v. Chapman,* 763 A.2d 895, 899 n. 4 (Pa.Super.2000). As a result, such "evidence must be accompanied by a cautionary instruction which fully and carefully explains to the jury the limited purpose for which that evidence has been admitted." *Commonwealth v. Claypool,* 508 Pa. 198, 495 A.2d 176, 179 (1985); *Billa,* 555 A.2d at 841–842; *Commonwealth v. Barger,* 743 A.2d 477, 481 (Pa.Super.1999). The trial court should have granted counsel's request for a cautionary instruction.

 ¶ 25 However, the error in failing to give a cautionary instruction was harmless. Failure to give a cautionary instruction on evidence of prior bad acts may be harmless depending on the evidence. *See Commonwealth v. Potts,* 388 Pa.Super. 593, 566 A.2d 287 (1989). The test for determining whether an error is harmless is as follows:

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was de minimis; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Hutchinson,* 571 Pa. 45, 811 A.2d 556, 561 (2002), citing *Commonwealth v. Robinson,* 554 Pa. 293, 721 A.2d 344, 350 (1999).

¶ 26 Here, any prejudicial effect the testimony may have had was insignificant compared to the overwhelming evidence of Appellant's guilt. The testimony went to why the victim delayed reporting the abuse, not the crime itself. She testified that she was sexually abused by Appellant approximately one hundred times. Appellant confessed to sexually abusing the child. Appellant testified that he was arrested for assaulting the victim's mother. Error in failing to give the requested cautionary instruction was harmless.

 ¶ 27 Appellant's next contention is that the trial court erred when it allowed improper comment during the Commonwealth's closing argument. During his testimony, Appellant was asked what happened when police came to the residence in response to domestic violence reports. He responded:

> They would tell me to calm down. Well, the one time I did get arrested for underage drinking and assault. And what happened there was I was trying to scare [the victim's mother], so I threw a bottle. It bounced off the wall, it hit her in the thumb. She had a bruise on her thumb. So the cops arrested me for assault. I paid a $25 fine and that was it.

N.T., 6/12/2007, at 148. During closing arguments, the Assistant District Attorney, commenting on this testimony, stated: "This is the same man who pled guilty to simple assault because he hit [the victim's mother]." N.T., 6/13/2007, at 52. Defense counsel objected and moved for a mistrial, which was denied. Defense counsel then asked for a cautionary instruction, and the trial court immediately instructed the jury, as follows:

> Ladies and Gentlemen, I'm going to permit the Assistant District Attorney to continue. I do want to state this to you. You just heard reference to a prior offense involving the Defendant. You are instructed that you cannot consider that for any other purpose other than whether or not that may form some basis to consider whether the alleged victim in this case has had any or could have any fear or concern about that Defendant. There is no other purpose that you can use that reference for.

*Id.,* at 55. No objection was made concerning the adequacy of the cautionary instruction. Where an objection is made, then a curative instruction issued, appellant's only challenge is to the adequacy of the curative instruction. *Commonwealth v. Holmes,* 486 Pa. 415, 406 A.2d 510, 514 (1979). Because Appellant did not object to the instruction, any claim in relation to its adequacy is waived. *Commonwealth v. Sargent,* 253 Pa.Super. 566, 385 A.2d 484, 484 n. 2 (1978).

 ¶ 28 Comments by a prosecutor must be viewed in the context in which they were made. *Commonwealth v. Sampson,* 900 A.2d 887, 890 (Pa.Super.2006), citing *Commonwealth v. Correa,* 444 Pa.Super. 621, 664 A.2d 607, 609 (1995). "[A] new trial is not mandated every time a prosecutor makes an intemperate or improper remark." *Commonwealth v. Ervin,* 766 A.2d 859, 864 (Pa.Super.2000). "Generally, comments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Sampson,* 900 A.2d at 890. Pennsylvania follows the American Bar Association Standards in determining what conduct is impermissible

during closing arguments. Section 5.8 states that the "prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw." *Id.*

¶ 29 Appellant testified he was arrested for both underage drinking and assault. Appellant then proceeded to describe the circumstances. He then concluded: "[T]he cops arrested me for assault. I paid a $25 fine and that was it." N.T., 6/12/2007, at 148.

▪ ¶ 30 "Closing argument is not evidence." *Commonwealth v. Drummond,* 775 A.2d 849, 858 (Pa.Super.2001). The Commonwealth was free to argue all reasonable inferences from the evidence presented, including Appellant's testimony. While Appellant never explicitly stated he pleaded guilty to simple assault, Appellant did admit that he threw a bottle that hit the victim's mother, that he was arrested for assault, and that he paid a fine to resolve the matter. The Commonwealth's statement was reasonable. Based on the context of the Commonwealth's argument that the victim was afraid of Appellant, Appellant's entire answer, and the trial court's cautionary instruction, there was no error.

▪ ¶ 31 Appellant's final argument is that the trial court erred when it permitted the Commonwealth to amend the information. After the close of evidence, but prior to closing arguments, the trial court granted the Commonwealth's motion to amend the information to charge Appellant with aggravated indecent assault of a child under the age of thirteen, 18 Pa.C.S.A. § 3125(b). The information originally charged the offense under 18 Pa.C.S.A. § 3125(a). Appellant contends this amendment was prejudicial because there was insufficient notice to permit meaning-ful opportunity to address the amended charge.

¶ 32 Appellant was initially charged with aggravated indecent assault under 18 Pa. C.S.A. § 3125(a)(1), (a)(3), and (a)(7), which define the crime as:

[P]enetration, however slight, of the genitals or anus of complainant with a part of the person's body for any purpose other than good faith, medical, hygienic or law enforcement procedures ... if:

(1) the person does so without the complainant's consent;

. . .

(3) the person does so by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

. . .

(7) the complainant is less than 13 years of age[.]

The amended information charged Appellant with aggravated indecent assault under 18 Pa.C.S.A. 3125(b), which states: "A person commits aggravated indecent assault of a child when the person violates subsection (a)(1), (2), (3), (4), (5) or (6) and the complainant is less than 13 years of age."

▪ ¶ 33 Pursuant to Pennsylvania Rule of Criminal Procedure 564, an information may be amended "when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense." Pa. R.Crim. P. 564. The purpose of this rule is to "ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." *Commonwealth v. Sinclair,* 897 A.2d 1218, 1221

(Pa.Super.2006); *Commonwealth v. Hoke,* 928 A.2d 300, 303 (Pa.Super.2007). The test to be applied when evaluating a challenge to an amended information was set forth in *Commonwealth v. Bricker,* 882 A.2d 1008, 1019 (Pa.Super.2005) (citation omitted), as follows:

> Whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

¶ 34 Relief is warranted only when the amendment to the information prejudices a defendant. *Commonwealth v. Roser,* 914 A.2d 447, 454 (Pa.Super.2006), *appeal denied* 592 Pa. 788, 927 A.2d 624 (Pa.2007); *Sinclair,* 897 A.2d at 1223. Factors to be considered when determining whether Appellant was prejudiced by the Commonwealth's amendment include whether the amendment changes the factual scenario; whether new facts, previously unknown to appellant, were added; whether the description of the charges changed; whether the amendment necessitated a change in defense strategy; and whether the timing of the request for the amendment allowed for ample notice and preparation by appellant. *Roser,* 914 A.2d at 454; *Sinclair,* 897 A.2d at 1223.

¶ 35 In the instant case, the amendment did not alter the factual scenario in any way; the amended charge evolved out of the same factual situation as the original charge. No new facts were added to the amended information. The amended charge consists of the same basic elements; in fact, 18 Pa.C.S.A. § 3125(b) explicitly references the initially charged subsections in its text. The child's age was known to Appellant prior to this amendment, and he knew this fact was at issue because it is an element of 18 Pa. C.S.A. § 3125(a)(7). Appellant's defense was that he never engaged in any inappropriate behavior; therefore the amendment did not hinder or necessitate any change in his defense strategy.

¶ 36 Appellant alleges that the amendment was unfair because the amended charge was a first degree felony, whereas the initial charge is a second degree felony. "[T]he mere possibility that amendment of an information may result in a more severe penalty due to the additional charge is not, of itself, prejudice." *Sinclair,* 897 A.2d at 1224. This Court has held that "[i]f there is no showing of prejudice, amendment of an information to add an additional charge is proper even on the day of trial." *Roser,* 914 A.2d at 455 (allowing amendment just prior to closing arguments); *Sinclair,* 897 A.2d at 1224. We find no prejudice to Appellant in granting the Commonwealth's motion to amend the information.

¶ 37 Judgment of sentence affirmed.

¶ 38 McEWEN, P.J.E. filed a concurring and dissenting statement.

CONCURRING AND DISSENTING STATEMENT BY McEWEN, P.J.E.:

¶ 1 While the Opinion of the majority reveals a careful analysis and presents a perceptive rationale to support positions with which, in substantial measure, I agree, I am compelled to differ with the ruling that the Commonwealth was properly permitted to amend the information at the close of the presentation of evidence at

trial. Rule 564 of the Pennsylvania Rules of Criminal Procedure provides in relevant part that an information may be amended "when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, *provided the information as amended does not charge an additional or different offense.*" Pa.R.Crim.P. 564 (emphasis supplied).

¶ 2 Here, the decision of the trial court to allow the Commonwealth to amend the information fundamentally altered the crime of which appellant was charged from a felony of the second degree, which carried a maximum minimum sentence of five years imprisonment, to a felony of the first degree, which carried a maximum minimum sentence of ten years imprisonment. *See:* 18 Pa.C.S. § 1103; 42 Pa.C.S. § 9752(b). Moreover, unlike the case of *Commonwealth v. Sinclair,* 897 A.2d 1218 (Pa.Super.2006)—upon which the majority relies—where the amendment was permitted on *the first day* of trial and this Court suggested that the defendant would have been entitled to a continuance if sought, here the amendment was permitted when the presentation of evidence had been completed and the trial judge was about to deliver the charge to the jury. As a result, appellant was preempted from adjustment of his trial strategy, which might well have included the tactic of pleading guilty to the lower graded felony.

¶ 3 It bears particular emphasis that this Court in *Sinclair* specifically remarked that "for purposes of amending an information, *a substantive amendment is one that changes the nature or grade of the offense charged." Id.,* 897 A.2d at 1223 n. 8 (emphasis supplied).[4]

¶ 4 Therefore, while I join in the Opinion of the majority in most aspects, I am of the mind, most respectfully, that the trial court erred when it permitted the prosecution to amend the information at the conclusion of the presentation of all of the evidence by both parties. Accordingly, I would vacate the judgment of sentence on that conviction and remand this case for resentencing on the lesser graded offense.

4. It bears further mention that in the other case relied upon by the majority, namely, *Commonwealth v. Roser,* 914 A.2d 447 (Pa.Super.2006), *appeal denied,* 592 Pa. 788, 927 A.2d 624 (2007), the Court specifically found that the amended charges were "filed under a different section of the same DUI statute," and that the change was "prompted by" defendant's own defense strategy of confessing to a different crime in the hope of escaping responsibility for the originally charged offense. *Id.* at 455.