J-S76022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| AMINI MAZZAGATTI | |
| Appellant | No. 721 EDA 2017 |

Appeal from the Judgment of Sentence Entered January 30, 2017
In the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0002552-2016

BEFORE:  PANELLA, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                      **FILED MARCH 01, 2018**

Appellant Amini Mazzagatti appeals from the January 30, 2017 judgment of sentence entered in the Court of Common Pleas of Montgomery County ("trial court"), following her bench convictions for harassment and disorderly conduct (third-degree misdemeanor).[1]  Upon review, we vacate and remand for a new trial.

On February 29, 2016, Officer John Gibson, East Norriton Police Department, charged Appellant with disorderly conduct and harassment under Sections 5503(a)(4) and 2709(a)(5) of the Crimes Code, respectively.  The affidavit of probable cause accompanying the complaint provided in relevant part:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2709(a)(4) and 5503(a)(4).

On Monday, February 22, 2016, at 1310 hours [East Norriton Police Officers] responded to 110 Stony Way regarding a reported disturbance. Caller, Nikki Hines, reported her upstairs neighbor, [Appellant], was throwing items from her balcony onto Hines' porch. [Appellant] resides at 124 Stony Way, East Norriton Township, Montgomery County, Pennsylvania.

On arrival, [Officer Gibson] met Hines on her porch. The porch area of 110 Stony Way is situated under the upstairs balcony of 124 Stony Way, [Appellant's] residence. [Appellant] reportedly had gone back inside her residence prior to [Officer Gibson's] arrival. Hines related she was simply standing on her porch, smoking, when suddenly a[n] unknown liquid was poured onto her glass table. Hines stepped out from her porch and looked up. Hines said she saw [Appellant] standing on her balcony. [Appellant] reportedly then threw several items over her balcony onto Hines' porch. These items included; dirt from a potted plant, liquid from a glass, a glass container, raspberries, and various pieces of trash which all hit the ground/porch area very close to where Hines was standing. Hines yelled at [Appellant] to stop. Upon seeing Hines, [Appellant] reportedly began screaming at Hines, caller her "***ugly***" and "***a drug addict***." [Appellant] then reached over the balcony and sprayed a[n] unknown liquid from an aerosol can, pointing it directly at Hines. [Appellant] then went back into her residence. Hines related this is an ongoing course of conduct perpetrated by [Appellant]. A course of conduct that has placed Hines in a constant state of alarm and fear [over] what [Appellant] is going to do next.

Hines completed a written statement regarding the incident. Looking around the porch area, [Officer Gibson] observed damage consistent with Hines' statements. A round glass table on the porch was covered in what appeared to be iced tea and fresh potted plant dirt. There were several smashed raspberries on the porch and on a child's toy bike. [Officer Gibson] took photographs of the area[.] . . . Looking up at the balcony to [Appellant's] residence, [Officer Gibson] observed multiple potted plants, glass jars, and other decorative items similar to the debris on Hines' porch.

At 1525 hours this date, [the officers] returned to 110 Stony Way regarding another disturbance. On arrival, [Officer Gibson] again spoke with Hines on her front porch. Hines related having just finished cleaning up her porch when [Appellant] threw a full potted plant down onto her glass table. The table and surrounding area was covered in potted plant dirt and shards of red clay from a broken planter. Hines advised she was at a next door neighbor's residence when she heard something smash outside. She returned to her residence to find the damage. Hines advised another neighbor, Dominic Milito, saw [Appellant] stand on her balcony and throw the potted plant onto her table. Milito did speak with [another officer] while [Officer Gibson] was speaking with Hines. Milito advised [the other officer] he was seated in his truck, parked in front of 112 Stony Way when he saw [Appellant]

pick up a potted plant from her balcony and throw it onto the porch of 110 Stony Way, Hines' residence. Milito provided a written statement regarding his observations.

[The officers] were able to make contact with [Appellant, who] denied throwing anything from her balcony. [Appellant] did admit to spraying something from an aerosol can over her balcony, advising it was only because Hines was smoking.

[Officer Gibson] conducted a search of Police reports involving [Appellant] and Nikki Hines over the past calendar year. [He] discovered thirteen reports not including this one.

Affidavit of Probable Cause, 3/1/16 (emphasis added) (sic). In addition, on the day of the incident, Hines provided the police with a written statement, accusing Appellant of calling her "***ugly***," and "***trash***," and stating that Hines had "***no life***" and "***smoke[d] weed***." Statement Form, 2/22/16, attached to Appellant's Brief (emphasis added). Eventually, Appellant was held for court on all charges. On January 30, 2017, the Commonwealth filed an information, charging Appellant with harassment and disorderly conduct, the same crimes as those charged in the criminal complaint.

On the same day, the trial court conducted a bench trial, at the beginning of which the Commonwealth moved to amend the criminal information as to both crimes. The Commonwealth orally moved, under Pa.R.Crim.P. 564, to amend the charge of harassment from subsection (a)(5) to (a)(4) and the grading of the charge of disorderly conduct from a summary offense to a misdemeanor in the third degree consistent with Section 5503(b). Section 2709(a) provides in pertinent part:

A person commits the crime of harassment when, with the intent to harass, annoy or alarm another, the person:

. . . .

- 3 -

(4) communicates to or about such other person **any lewd, lascivious, threatening or obscene** words, language, drawings or caricatures;

(5) communicates repeatedly in any **anonymous manner**[.]

18 Pa.C.S.A. § 2709(a)(4), and (5) (emphasis added). Under 5503(b), disorderly conduct "is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or **if he persists in disorderly conduct after reasonable warning or request to desist**. Otherwise, disorderly conduct is a summary offense." 18 Pa.C.S.A. § 5503(b) (emphasis added). In support of the amendments, the Commonwealth argued that "[t]he offenses charged here arise from the exact same set of facts and circumstances, and [Appellant] has been put on notice as to the facts that will attempted to be proven by the Commonwealth today." N.T. Trial, 1/30/17, at 4 (sic). Over Appellant's objection,[2] the trial court granted the Commonwealth's motion to amend the information. *Id.* at 5-6. At trial, among others, Hines testified about the February 22, 2016 incident:

> On that day I went outside to smoke a cigarette. I smoke outside. And I was on my patio, and [Appellant's] balcony is above mine. And when I was out there, there was snow, it just snowed recently, and there was a big thing of like water or ice or something that like fell down on the table.
>
> At first, like, I mean, it scared me, and I thought it was, you know, a gutter that fell or something like that. So then I was like, okay. And then a couple seconds later, there was trash being thrown down, trash, paper. There was bread, batteries, being spattered over, and then other debris of things just being thrown over. So now I know it wasn't that. There was also spray being sprayed down. I don't know if it was Lysol, Febreze or something like that being sprayed down over [Appellant's] balcony onto me.

---

[2] Appellant argued that subsection (a)(4) represents a "different" charge from subsection (a)(5). N.T. Trial, 1/30/17, at 5.

And then there was a glass bottle thrown over that, actually, went over the balcony, over to common ground on the sidewalk. So, I mean, I looked out up at first, just kind of looked up, and I did see her throwing this stuff, and then I had went back under and I called the police, and then the police came. And then they had, you know, collected glass, talked to me. I believe they talked to [Appellant.] And then we went back – I went back inside.

And then I was actually going over to clean my neighbor's house who lives at 112 Stony Way, and there was things, you know, constant things being said, you know: I'm done. I'm a **loser**. I'm a **skank**. I'm a **drug addict**.

. . . .

Well, [Appellant] was saying it as things were being thrown down, you know, I'm a **bitch** and this and that. And then again after the police had come, you know, I went over to clean, and things were being said again. There was a mailman that was actually walking up as well . . . .

. . . .

The mail man was just walking by and [Appellant] started saying things to the mailman about me saying I'm a **dog** and to watch me, and I'm a dog, you know, I'm a dog and this and that, which I do have on video.

*Id.* at 12-14 (emphasis added). At the conclusion of trial, the trial court found Appellant guilty of harassment under subsection (a)(4) of the Crimes Code and disorderly conduct, graded as a third-degree misdemeanor. The trial court sentenced Appellant to, *inter alia*, one year of probation on each count, to run consecutively. Thus, Appellant received an aggregate term of two years' probation. On February 7, 2017, Appellant filed a post-sentence motion, which the trial court denied on February 13, 2017. Appellant timely appealed to this Court. Appellant filed of a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion, concluding, among other things, that it did not abuse its discretion in permitting the Commonwealth to amend the information by

replacing subsection (a)(5) with (a)(4). Specifically, the trial court found that "[t]he amended charges arise from the same factual scenario, so no surprise could have resulted." Trial Court Opinion, 6/1/17, at 14. The trial court further found that "[t]he facts alleged by the Commonwealth were unchanged, they had never alleged that the communications in this case were anonymous,[3] and [Appellant] was on notice that she was alleged to have called the victim inappropriate names like bitch, skank, drug addict, and a dog." *Id.* at 15. With respect to Appellant's sufficiency claim, the trial court concluded that she was guilty of harassment under subsection (a)(4) because Appellant "called Ms. Hines a "skank" multiple times, including while a mailman was walking by. By calling Ms. Hines a "skank" repeatedly, both to her face and in front of the mailman, [Appellant] communicated to and about the victim *lewd* words."[4] *Id.* at 8. (emphasis added).

On appeal, Appellant presents three issues for our review:

---

[3] For purposes of this appeal, it is immaterial whether the Commonwealth would have established harassment under subsection (a)(5). Any suggestion that the Commonwealth never intended to charge Appellant under subsection (a)(5) must be rejected, because the Commonwealth failed to raise it before the trial court.

[4] The trial court cited the Oxford English Dictionary to find that the term skank is defined "as a woman who has many casual or sexual encounters or relationships." Trial Court Opinion, 6/1/17, at 8 (internal citation omitted). Moreover, citing the Cambridge English Dictionary, the trial court further found that skank refers to "an unpleasant person, especially a woman who has sex with a lot of different people." *Id.* Based primarily on these sources, the trial court concluded that "calling someone a skank is lewd as it says the victim is sexually unchaste." *Id.*

- 6 -

[I.] Whether the evidence was insufficient as a matter of law to support conviction on count 1 charging harassment.

[II.] Whether the trial court erred in allowing an amendment to the bills of information.

[III.] Whether the trial court erred in denying Appellant's challenge to the weight of the evidence as the charges of disorderly conduct and harassment.

Appellant's Brief at 7 (unnecessary capitalization omitted).

We first address Appellant's second argument that the trial court abused its discretion in permitting the last-minute amendment by the Commonwealth of the charge of harassment. *See* Appellant's Brief at 27.

It is settled that the "[t]he decision of whether to allow the Commonwealth to amend the Informations [sic] is a matter within the discretion of the trial court, and only an abuse of discretion will constitute reversible error." ***Commonwealth v. Small***, 741 A.2d 666, 681 (Pa. 1999), ***cert. denied***, 531 U.S. 829, 121 S. Ct. 80 (2000).

At the relevant time, Pennsylvania Rule of Criminal Procedure 564 provided:

> The court may allow an information to be amended when there is defect in form, the description of the offense(s), the description of any person or any property, or the date charged, ***provided the information as amended does not charge an additional or different offense***. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564 (emphasis added).[5]

---

[5] Effective December 21, 2017, Rule 564 has been amended "to more accurately reflect the interpretation of this rule that has developed since it first was adopted in 1974." Pa.R.Crim.P. 564, *cmt*. However, the amended version is not applicable *sub judice*.

- 7 -

As we explained in **Commonwealth v. Page**, 965 A.2d 1212 (Pa. Super. 2009), **appeal denied**, 74 A.3d 125 (Pa. 2013):

The purpose of this rule is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by **prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed**. The test to be applied when evaluating a challenge to an amended information was set forth in **Commonwealth v. Bricker**, 882 A.2d 1008, 1019 (Pa. Super. 2005) (citation omitted), as follows:

Whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. **If, however, the amended provision alleges a different set of events, or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted**.

Relief is warranted only when the amendment to the information prejudices a defendant. Factors to be considered when determining whether Appellant was prejudiced by the Commonwealth's amendment include whether the amendment changes the factual scenario; whether new facts, previously unknown to appellant, were added; whether the description of the charges changed; whether the amendment necessitated a change in defense strategy; and whether the timing of the request for the amendment allowed for ample notice and preparation by appellant.

**Page**, 965 A.2d at 1223-24 (internal citation and quotation marks omitted) (emphasis added). We recently held that the trial court abused its discretion in permitting the Commonwealth to amend the information to add a new charge where "[t]he Commonwealth injected [the] new charge into this case at the eleventh hour in clear disregard for rules whose purpose is to give the

defendant a fair opportunity to prepare and present her defense." *Commonwealth v. Williams*, 166 A.3d 460, 464 (Pa. Super. 2017).

Here, Appellant argues that, at the beginning of trial, the Commonwealth moved to amend the information, which, as the docket indicates, was filed a few hours earlier, because it sought to change subsection (a)(5) to (a)(4). According to Appellant, the trial court's grant of the Commonwealth's motion was an abuse of discretion. Appellant argues that permitting the Commonwealth to change subsection (a)(5) to (a)(4) of Section 2709 (harassment) not only added different elements, but also added different facts previously unknown to her. Appellant argues that she was unaware and uninformed that the Commonwealth was going to establish that she used lewd language toward Hines by introducing evidence at trial that Appellant referred to Hines as a "skank." *See* Appellant's Brief at 32. Specifically, Appellant claims:

> The discovery indicated that the words used were "ugly", "trash", "no life", "smoke weed" in referring to [Hines]. In the affidavit of probable cause, the words "ugly" and "drug addict" were reported. At trial, however, the evidence was changed to the words bitch, dog, drug addict and skank and the trial court focused on the word skank to support the harassment conviction.

*Id.*

Based on our review of the record, we are constrained to agree with Appellant. Here, the record reveals that the Commonwealth charged Appellant with harassment under subsection (a)(5), which contains the element "communicates repeatedly in an *anonymous manner*." In support

of this charge, the Commonwealth alleged that Appellant referred to Hines as "ugly," and a "drug addict." In addition, during discovery, the Commonwealth provided Appellant with Hines' written statement wherein she accused Appellant of calling her "ugly," and "trash," and remarking that Hines had "no life" and "smoke[d] weed."

On the day of trial, the Commonwealth not only filed the information, but orally moved to amend it at the beginning of trial. In so doing, the Commonwealth asked the trial court for permission to change subsection (a)(5) to (a)(4), which contains the element of "communicates to or about such other person any **lewd, lascivious, threatening or obscene** words, language, drawings or caricatures." In support of its motion, the Commonwealth represented to the trial court that "the offenses charged here arise from the **exact same** set of facts and circumstances, and [Appellant] has been put on notice as to the facts that will attempted to be proven by the Commonwealth today." N.T. Trial, 1/30/17, at 4 (emphasis added). At trial, however, instead of relying on facts previously disclosed to Appellant via the criminal complaint and discovery, the Commonwealth presented new facts previously unknown to Appellant. Specifically, the Commonwealth presented the testimony of Hines, who, for the first time, stated that Appellant had called her bitch, dog, and a skank. Focusing and relying on the term "skank," the trial court concluded that Appellant harassed Hines by using lewd language toward her in violation of subsection of (a)(4). Because harassment under subsection (a)(4) and (a)(5) contains different elements and because the

Commonwealth disclosed new facts to Appellant for the first time during trial, the trial court abused its discretion in granting Commonwealth's motion to amend the information. Appellant was not afforded a fair opportunity to prepare and present her defense to harassment under subsection (a)(4).[6] Accordingly, we vacate Appellant judgment of sentence and remand this case to the trial court for a new trial.[7]

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judge Panella joins this memorandum.

Judge Platt concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/1/18

---

[6] To the extent the trial court found that Appellant was "on notice that she was alleged to have called the victim inappropriate names like bitch, [and] skank," such finding is not supported by the record as detailed above. At no point prior to trial did the Commonwealth disclose to Appellant that she was accused of referring to Hines by those words.

[7] Based on the outcome of this case, we need not address Appellant's remaining issues.

- 11 -