J-A08007-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMIRAE JAMAL BENTON | : | |
| | : | |
| Appellant | : | No. 1884 WDA 2017 |

Appeal from the Judgment of Sentence July 19, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0004219-2016

BEFORE:  PANELLA, P.J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY PANELLA, P.J.:                    FILED OCTOBER 22, 2019

Amirae Jamal Benton appeals from the judgment of sentence imposed following his jury trial conviction of first-degree murder, carrying a firearm without a license, conspiracy, and robbery. On appeal, Appellant claims the court erred when it denied his motion for a new trial after a witness recanted, erred in admitting his out of court statement that he had committed other robberies, and precluding the former testimony of an unavailable co-defendant. Finally, Appellant claims that his mandatory life sentence is against the principle of Miller v. Alabama, 567 U.S. 460 (2012). We affirm.

On October 10, 2015, Appellant, his co-defendant Lucas Guggenheimer, and the victim, Justin Granda, took a cab to the Turtle Creek section of Pittsburgh to buy marijuana from Sean Speiber, an associate of Granda's. Upon arriving at the Speiber residence, Guggenheimer and Granda went inside. Appellant remained in the cab with the driver, who, at Guggenheimer's

direction, drove Appellant around the area awaiting Guggenheimer and Granda's return.

While in the Speiber residence, Guggenheimer pulled a gun on Speiber in an attempt to rob him during the drug deal. A fight ensued, during which Guggenheimer shot Speiber's brother in the leg. Guggenheimer and Granda then left the residence with neither the marijuana nor the money they had brought to pay for it.

After Guggenheimer and Granda returned to the cab, they appeared hurried and out of breath. Guggenheimer instructed the cab driver to drive them to Arlington, and while en route, Granda complained about having lost his cell phone at the Speiber residence. When they reached Arlington, all three men exited the cab near Choung's Market on the 2200 block of Arlington Avenue. Cell phone location data corroborated Appellant's location throughout the evening, and placed him in the Arlington area shortly after midnight on October 11, 2015.

At 12:20 a.m., Luis Rodriguez heard screaming from outside his house at 2228 Arlington Avenue. He looked out of his bedroom window, and saw two men chasing another man down the street, firing guns at him. Mr. Rodriguez saw the man being chased fall down, and one of the men then run up to him and shoot five times.

Police arrived on the scene soon thereafter and found Granda deceased on the sidewalk, having been shot eight times. Investigators found shell

casings from 9 mm and .32 caliber bullets at the scene, and later recovered 9 mm and .32 caliber bullets from Granda's body.

Shortly after the shooting, police officers encountered Appellant less than one-half mile away from where they found Granda's body. Appellant told the officers that his car had broken down. When later confronted with surveillance video, Appellant admitted that he, Guggenheimer, and Granda had walked together toward where Granda was killed. Appellant was arrested and charged with having killed Granda.

During Appellant's jury trial, William Jackson, an inmate in jail with Appellant, testified against him.[1] Jackson testified that Appellant told him that he and two other people went on a robbery, that they were seen on surveillance video, and that they shot somebody with two different caliber weapons. See N.T. Trial, 4/25/17, at 23. Appellant told him that he did not think the cab driver could identify him by just his eyes. See id. at 30. Appellant also told Jackson that he and Guggenheimer "used to rob people" together. Id. at 32.

Co-defendant Guggenheimer invoked his right not to testify at Appellant's trial. Appellant consequently sought to admit Guggenheimer's testimony from Guggenheimer's own earlier trial as former testimony of an

---

[1] The trial court denied Appellant's motion to suppress Jackson's testimony, and denied the motion to preclude statements about prior bad acts such as the robberies.

unavailable witness.[2] The trial court denied Appellant's motion, ruling that the Commonwealth did not have a similar motive when it cross-examined Guggenheimer. See N.T. Trial, 4/26/17, at 15-16.

At the conclusion of trial, the jury found Appellant guilty of murder of the first-degree, carrying a firearm without a license, robbery, and conspiracy. On July 19, 2017, the trial court sentenced Appellant to a mandatory life-sentence without the possibility of parole for the first-degree murder conviction, and imposed a consecutive sentence of not less than three and one-half, nor more than seven years of incarceration for carrying a firearm without a license. The court did not impose a sentence at the remaining counts.

Appellant filed a timely post-sentence motion seeking a new trial based on after discovered evidence—a letter he received from Jackson recanting his trial testimony. During a hearing on the motion for a new trial, Jackson invoked his right not to testify. Supervisory Special Agent Gary Tallent, from the Pennsylvania Office of the Attorney General, also testified at the hearing. He stated that Jackson had called him and apologized for having written the letter and said that what he wrote in it was not true. See N.T. Hearing, 11/30/17, at 11. Following argument, the court denied Appellant's motion, explaining that it did not find anything in the letter to warrant a new trial,

_____

[2] Appellant and his co-defendant, Guggenheimer, were tried separately. Guggenheimer was convicted of third degree murder and related offenses prior to Appellant's trial.

given that Jackson's credibility was already at issue when he testified, and he did not testify about the letter at the post-sentence motion hearing. This timely appeal followed.

Appellant raises four issues on appeal.

I. [Whether] the court err[ed] by failing to award a new trial based on after-discovered evidence of recantation from the Commonwealth's key witness, and did this error result in Appellant's being denied due process and a fair trial?

II. [Whether] due process and the right to a fair trial [were] violated when the court allowed evidence of prior bad acts without contemporaneous limiting jury instructions and where the prosecutor argued to the jury in closing that said evidence showed Appellant to be a "career criminal[?]"

III. [Whether] due process and the right to a fair trial [were] denied by the court's refusal to admit into evidence the unavailable codefendant's former testimony from his own trial which exculpated Appellant?

IV. [Whether] the court err[ed] in sentencing Appellant to a mandatory sentence of life without parole on his conviction for a crime committed when he was only eighteen years, two months of age, in violation of the scientific consensus, constitutional analysis and foundational principles of Miller v. Alabama?

Appellant's Brief, at xi.

Appellant first claims that the trial court erred when it denied his motion for a new trial. We review a trial court's decision to deny a new trial based on after-discovered evidence for "an abuse of discretion or an error of law which controlled the outcome of the case." Commonwealth v. Woeber, 174 A.3d 1096, 1108 (Pa. Super. 2017) (citation and internal quotation mark omitted).

To obtain a new trial based on after-discovered evidence, the defendant must prove, by a preponderance of the evidence, that

the evidence: (1) could not have been obtained before the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict.

Commonwealth v. Murray, 174 A.3d 1147, 1153 (Pa. Super. 2017) (citations omitted). Notably, it is the defendant's burden to prove that the evidence warrants a new trial, and he must do so by a preponderance of the evidence.

Here, Appellant claims that the letter written by Jackson, recanting his testimony, constitutes after-discovered evidence and provides the basis for granting a new trial. The letter could not have been obtained prior to the close of trial because it was written after the jury rendered the verdict. Appellant argues that because the letter is a complete retraction of testimony, it would be neither cumulative, nor used solely to impeach Jackson. Furthermore, he claims that evidence of Jackson's recantation would likely result in a different verdict because Jackson was the only witness who testified that Appellant was involved in the robbery and shooting. See Appellant's Brief, at 24-38. We disagree.

In assessing the credibility of after-discovered evidence, the trial court must discern "whether the nature and quality of the evidence is such that there is a reasonable probability that the jury would have credited it and rendered a more favorable verdict." Commonwealth v. Johnson, 966 A.2d 523, 542 (Pa. 2009). "It is well-settled recantation evidence is notoriously unreliable, and where it involves an admission of perjury, it is the least reliable

source of proof." Commonwealth v. Hannibal, 156 A.3d 197, 222 (Pa. 2016) (citations omitted).

Here, the trial court explained:

In this [c]ourt's view, Jackson authored the letter out of anger and not because the information contained in it was truthful. Jackson never ratified the substance of the letter. On the contrary, he advised Detective Tallent that the contents of the letter were false. There is no basis in the evidentiary record for this [c]ourt to find that credible after-discovered evidence established that Jackson recanted his testimony. Accordingly, no relief is warranted on this basis.

Trial Court Opinion, 7/18/18, at 18.

Upon review, we conclude that the trial court neither abused its discretion nor committed an error of law when it determined that the recantation evidence of Jackson's letter lacked credibility. Detective Tallent testified that Appellant told him the letter was false, and Jackson refused to testify concerning his letter at the post-sentence motion hearing, either to confirm or deny the validity of the letter. Accordingly, the trial court did not err in finding that Appellant had not proven, by a preponderance of the evidence, that the letter would likely result in a different verdict. See Murray, 174 A.3d at 1153. Appellant's first issue does not merit relief.

In his second issue, Appellant claims that the trial court erred when it denied his motion to suppress evidence of other robberies. Our scope and standard of review concerning the admission of evidence of a prior bad act by the defendant is well settled.

The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be

reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of that evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

Evidence of prior bad acts committed by a defendant is not admissible solely to show the defendant's bad character or his propensity for committing bad acts. However, evidence of prior bad acts is admissible where there is a legitimate reason for the evidence, such as to establish: 1) motive; 2) intent; 3) absence of mistake or accident; 4) a common scheme or plan; and 5) identity. The evidence may also be admissible to impeach the credibility of a testifying defendant; to show that the defendant has used the prior bad acts to threaten the victim; and in situations where the bad acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development.

Commonwealth v. Page, 965 A.2d 1212, 1219 (Pa. Super. 2009) (citation and emphasis omitted).

Appellant claims that the trial court erred when it permitted Jackson to testify that Appellant told him that he and Guggenheimer "used to rob people." N.T. Trial, 4/25/17, at 32; see also Appellant's Brief, at 39-48. He asserts that the statement is evidence of prior bad acts, which is inadmissible unless it falls into a specified exception. He claims that the evidence does not tend to prove intent because there is no connection between the other robberies and the Speiber robbery. See Appellant's Brief, at 41. Finally, Appellant argues that the probative value of the prior bad acts does not outweigh its unfair prejudice.

> To be admissible to show intent or motive, the evidence must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances. There must be a logical connection between the prior incident and the crime for which the accused is being tried. Important factors to be considered in making this determination include the proximity in time between the incidents; the similarity in the circumstances surrounding the incidents; and whether evidence of the prior crime is necessary to rebut the accused's evidence or contention of accident, mistake or lack of required intent.

Commonwealth v. Camperson, 612 A.2d 482, 484 (Pa. Super. 1992) (citations and internal quotation marks omitted).

Here, the trial court found that the evidence was probative to rebut Appellant's claim that he "was merely along for the ride when he accompanied Guggenheimer to Speiber's residence." Trial Ct. Op., 7/18/18, at 16 (internal quotation marks omitted). The court elaborated that the statement was direct evidence that Appellant had participated in robberies with Guggenheimer in the past, and it refuted Appellant's claim that he was merely present in the cab and not a participant in the robbery. See id. at 17.

Upon review, we conclude that the trial court did not abuse its discretion in admitting Appellant's statement. The evidence that Appellant and Guggenheimer had committed robberies together in the past was relevant to show that Appellant was aware of Guggenheimer's plan to rob Sean Speiber, and that his intent in riding around in the cab was to help facilitate the robbery. Furthermore, we conclude that the probative value of the statement outweighs its prejudicial effect. See Page, 965 A.2d at 1219. In addition, we note that the trial court gave a curative instruction concerning the prior bad acts

evidence, see N.T. Trial, 4/26/17, at 187-88, which the jury is presumed to have followed. See Commonwealth v. Fletcher, 41 A.3d 892, 896 (Pa. Super. 2012). Accordingly, Appellant's second issue does not merit relief.

In his third issue, Appellant claims that the trial court erred when it refused to admit the trial testimony of Guggenheimer into evidence during Appellant's trial. Appellant argues that Guggenheimer's testimony at his own trial met the requirements of Rule 804(b)(1), and should have been admitted as former testimony. Specifically, he claims that Guggenheimer testified under oath, and that the prosecutor for the Commonwealth, who tried both cases, had a similar motive in cross-examining Guggenheimer. See Appellant's Brief, at 49-53. We disagree.

We review a trial court's evidentiary ruling for an abuse of discretion or an error of law. See Page, 965 A.2d at 1219. The Pennsylvania Rules of Evidence bar admission of hearsay evidence, except as specifically provided by the rules. See Pa.R.E. 802. Rule 804 sets forth the exception to the rule against hearsay concerning former testimony of an unavailable witness, as follows:

> (b) The Exceptions. The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
> (1) Former Testimony. Testimony that:
>
>> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
>>
>> (B) is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an

> opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Pa.R.E. 804(b)(1).

"Similar motive to cross-examine is determined by ascertaining the interests and objectives of the party in the first proceeding." *Commonwealth v. Colon*, 846 A.2d 747, 756 (Pa. Super. 2004) (citation and internal quotation marks omitted). Accordingly, in order for a first co-defendant's testimony from his own trial to be admissible at a later trial of a second co-defendant, the prosecutor must have an interest in establishing beyond a reasonable doubt the guilt of the second co-defendant while cross-examining the first co-defendant at his own trial.

In the instant case, the trial court found:

> It was clear that the Commonwealth did not have a similar motive in each trial to develop the testimony concerning [Appellant's] possession of a firearm. In Guggenheimer's trial, Guggenheimer testified that he did not shoot the victim. He attempted to put his gun in the hands of some other person, not the defendant. He denied knowing much, if anything, as to how the victim was shot. Because the Commonwealth's motive during Guggenheimer's trial was to convict Guggenheimer, the Commonwealth's attorneys were not focused on [Appellant's] culpability at all. They had no interest in engaging in any cross-examination impacting the guilt of [Appellant] in this case. This Court does not believe that the testimony of Guggenheimer at Guggenheimer's trial was admissible in this case.

Trial Ct. Op., 7/18/18, at 11 (emphasis added).

Upon review, we agree that the Commonwealth did not have a similar motive to cross-examine Guggenheimer. As the trial court aptly noted, in Guggenheimer's trial, the Commonwealth's motive to cross-examine was to

establish Guggenheimer's guilt. If Guggenheimer were to testify at Appellant's trial, the Commonwealth's motive would be to establish Appellant's guilt. Accordingly, we conclude that the trial court did not abuse its discretion in concluding that the former testimony exception did not apply to Guggenheimer's testimony from his trial. Appellant's third issue is meritless.

Finally, in his fourth issue, Appellant claims that his mandatory sentence of life imprisonment without the possibility of parole is unconstitutional pursuant to Miller v. Alabama, because he was only a few months older than eighteen at the time of the shooting. Appellant concedes that Pennsylvania law holds that Miller does not apply to those over the age of eighteen at the time their crimes were committed; however, he raises this issue now to preserve his Miller claim. See Appellant's Brief at 57-58.

As Appellant acknowledges, this Court has held that Miller v. Alabama permits sentencing an individual to a mandatory term of life imprisonment without the possibility of parole if that individual was at least eighteen years old at the time of the offense. See Commonwealth v. Montgomery, 181 A.3d 359, 361 (Pa. Super. 2018) (en banc), appeal denied, 190 A.3d 1134 (Pa. 2018); see also Commonwealth v. Lee, 206 A.3d 1, 11 (Pa. Super. 2019) (en banc) (declining to extend Miller v. Alabama to offenders who are at least eighteen years old at time of offense). We are bound by the prior decisions of this Court and decline to revisit this issue. Appellant's fourth issue does not merit relief.

Judgment of sentence affirmed.

- 12 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: __10/22/2019__